251 So.2d 552 (1971)
The READER'S DIGEST ASSOCIATION, d/b/a Reader's Digest, a Foreign Corporation Not Permitted to Do Business in the State of Florida, Appellant,
v.
STATE of Florida On the Relation of Doyle CONNER, Commissioner of Agriculture of the State of Florida, et al., Appellees.
No. P-131.
District Court of Appeal of Florida, First District.
August 17, 1971.
Rehearing Denied September 9, 1971.
*553 Ausley, Ausley, McMullen, McGehee & Carothers, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., Robert A. Chastain and Donald K. Rudser, Tallahassee, for appellees.
RAWLS, Judge.
By this interlocutory appeal Reader's Digest challenges the in personam jurisdiction of the State of Florida. The sole issue as posed by appellee is: The Court erred in denying defendant's motion to dismiss for lack of jurisdiction and in retaining jurisdiction.
The State of Florida instituted an action seeking a declaratory judgment and an injunction against Reader's Digest Association, Inc., a Delaware corporation, alleging, inter alia, that the defendant is conducting a lottery by the mailing of various paraphernalia to the citizens of Florida. Service of process was attempted to be accomplished pursuant to the provisions of F.S. § 48.181 (1969), F.S.A. Reader's Digest, by appropriate motions, attacked the jurisdiction of the trial court, which motions were denied. Hence, this appeal.
The trial judge in his well-reasoned order found:
"The complaint and accompanying affidavits disclose that the defendant is engaged in the monthly publication of a magazine and the sale of record albums, a quarterly volume of `Reader's Digest Condensed Books' and a 12-volume series of condensed books entitled `Family Treasures of Great Biographers' and is engaged in a massive campaign to sell subscriptions to its magazine and the other described items of personal property.
"This campaign is conducted by mail and advertising material, copies of which are attached to the complaint, has been mailed to `as many as 50 million people throughout the United States.' This is approximately one-fourth of the entire population. While there is no showing of the number of mailings to persons in Florida, the exhibits attached to the complaint show that 10,408 `winners' in Florida of `Sweepstakes' prizes have received some sort of prize for participating in the program, at least to the extent of responding to letters and indicating an interest in the `Sweepstakes' drawings and receiving their prizes. Thus, from the defendant's own statements, more than 10,000 people in Florida have received the advertising material, have replied from Florida, and have been given prizes presumably delivered in Florida by mail."
Resolution of the question posed requires consideration of Federal law and Florida law upon the subject.

*554 Federal Law

International Shoe Company v. State of Washington[1] is the landmark decision rendered by the United States Supreme Court setting out Federal Due Process standards for the procurement of in personam jurisdiction by a state court of a foreign entity. The guidelines for acquiring jurisdiction were defined by the Supreme Court as follows:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
Many philosophical inquiries have been made by Federal and State courts in seeking the elusive qualities of "traditional notions of fair play and substantial justice."
In Traveler's Health Association v. Virginia,[2] the United States Supreme Court again considered requisites of due process in the exercise of in personam jurisdiction by a state over a foreign defendant. Traveler's involved solicitation and sale of certificates of insurance. The State of Virginia instituted suit in that State's courts utilizing a long arm statute to acquire in personam jurisdiction over Traveler's. In holding the process valid, the court stated:
"Measured by the principles of the Osborn [Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074], Hoopeston [Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777] and International Shoe Cases, the contacts and ties of appellants with Virginia residents, together with that state's interest in faithful observance of the certificate obligations, justify subjecting appellants to cease and desist proceedings under § 6. The Association did not engage in mere isolated or short-lived transactions. Its insurance certificates, systematically and widely delivered in Virginia following solicitation based on recommendations of Virginians, create continuing obligations between the Association and each of the many certificate holders in the state." (Emphasis supplied.)
Thus the Supreme Court of the United States held that the continuous and systematic solicitation of business within a state by a foreign corporation is a sufficient basis for subjecting the corporation to suit in such state. In Traveler's, the subject matter was insurance policies, and the State's interest was the protection of its citizens from "unfairness, imposition or fraud." In the instant case, the subject matter is an alleged lottery, and the State asserts its interest to be the protection of its citizens from the alleged unlawful actions of defendant. In Traveler's, the defendant engaged in a continuous and systematic mail order solicitation. In the instant cause, defendant also engaged in a continuous and systematic mail order solicitation. Traveler's is ample authority upon which to affirm the trial judge's order holding that Florida's "long arm statute" is not violative of Federal Due Process standards.[3]
*555 Reader's Digest strongly contends that the Federal Supreme Court's decision in Hanson v. Denckla[4] established the outer perimeters of permissible jurisdiction, and the facts being reviewed fall within the ambit of Hanson. We do not agree. The United States Court of Appeals, Sixth Circuit, in discussing Hanson in the case of Southern Machine Company v. Mohasco Industries, Inc.,[5] stated:
"* * * In that case, the Court held that Florida could not assume in personam jurisdiction over a Delaware trustee of a trust that was executed in Pennsylvania by a domicile of Pennsylvania who later moved to Florida. Noting the trend toward expanding personal jurisdiction over non-residents, the Court cautioned that to satisfy the requirements of due process `* * * it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' 357 U.S. at 253, 78 S.Ct. at 1240."
Unlike the facts in Hanson, defendant Reader's Digest has availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.[6]

Florida Law
Reader's Digest makes no contention that the subject statute, F.S. § 48.181 (1969), F.S.A., is defective; it contends vigorously that its activities are beyond the statute's reach, citing Lake v. Lucayan Beach Hotel Company; Fawcett Publications, Inc. v. Rand; Fawcett Publications, Inc. v. Brown; and Talcott v. Midnight Publishing Corporation.[7]
In Lucayan, the Third District Court of Appeal, citing Federal decisions, made the observation that "It is true that the mere solicitation of business is not sufficient to subject a foreign corporation to substituted service of process." We do not agree. "Mere" is an unfortunate adjective that has been used by courts in describing the solicitation rule for many years. The question is not "mere"; the sine qua non is "minimum contacts" which requires the evaluation of the quantity as well as the quality of the solicitation.[8]
The Rand case involved a libel action instituted by the plaintiff in a Florida circuit court against Fawcett Publications, Inc., which moved to quash with supporting affidavits. Fawcett proved that its magazines were sold to independent contractors in Florida as a result of orders received in Greenwich, Connecticut. Brown likewise involved a libel case against Fawcett Publications, *556 Inc. Motion to quash was filed by the publisher with supporting affidavits containing substantially the same statements as in Rand. The Talcott case also involved a libel action instituted in a Florida court against a foreign publisher that had no direct contacts with the citizens of Florida. Of significance is that no proof of solicitation or any direct contact by Fawcett or Talcott with the citizens of Florida was adduced. The foregoing cases are not factually in point.
We are not concerned here (using appellant's term) with "the mere mailing of magazines into Florida", nor are we concerned with a single act on the part of defendant. We are concerned with Reader's Digest invading the offices and homes of more than 10,000 Florida citizens and, at this stage of the pleadings, urging them to participate in an alleged lottery and purchase various goods and merchandise, such activities allegedly being contrary to the criminal and civil laws of Florida.
We adopt the learned trial judge's conclusion, viz.:
"It would be difficult to imagine a situation bringing a foreign corporation into closer contact with the people of Florida, the economy of Florida and the civil and criminal laws of Florida without the actual presence of its officers in this state."
Upon the facts now admitted, we hold that this type of "massive solicitation" on the part of Reader's Digest renders it subject to the "long arm statute."
Affirmed.
CARROLL, DONALD K., Acting C.J., and JOHNSON, J., concur.
NOTES
[1] International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
[2] Traveler's Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1949).
[3] See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, 226 (1957), in which it was stated: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."
[4] Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
[5] Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir.1968).
[6] The trial judge in the instant cause found:

"The defendant's advertisements invite, almost urge, the purchase of subscriptions and other items on credit, thus creating thousands of open accounts by citizens of Florida owing to the defendant."
[7] Lake v. Lucayan Beach Hotel Company, 172 So.2d 260 (Fla.DCA 3d 1965); Fawcett Publications, Inc. v. Rand, 144 So.2d 512 (Fla.DCA 3d 1962); Fawcett Publications, Inc. v. Brown, 146 So.2d 899 (Fla.DCA 2d 1962); and Talcott v. Midnight Publishing Corporation, 427 F.2d 1277 (5th Cir.1970).
[8] See 36 Am.Jur.2d, Foreign Corporations, § 356, p. 365, which states:

"In line with the `minimum contact' doctrine of the International Shoe Company v. Washington Case, the United States Supreme Court has rejected the rule that the mere solicitation of business by a foreign corporation is not sufficient to render the corporation amenable to jurisdiction and process * * *."