**Jeffrey WOLFSON, as general partner and on behalf of Pax Options, an Illinois general partnership, Plaintiff,**

**v.**

**S & S SECURITIES, a New York limited partnership, Nicholas Wells, Neil Silverman and David Berkowitz, Defendants.**

No. 90 C 4081.

United States District Court, N.D.Illinois, E.D.

Feb. 12, 1991.

Andrew B. David, William J. Gigler, Sugar, Friedberg & Felsenthal, Chicago, Ill., for plaintiff.

Julie P. Shelton, Burke, Bosselman & Weaver, Chicago, Ill., David O. Wright, Wright & McGoldrick, New York City, for defendant Nicholas A. Wells.

## ORDER

BUA, District Judge.

Defendant Nicholas Wells brings a flurry of motions before the court. Wells, along with others, is a defendant in a suit brought by Jeffrey Wolfson, in his capacity as general partner, on behalf of Pax Options ("Pax"). Pax is an Illinois general partnership. Wolfson seeks to recover monies allegedly owed Pax under a contract between Pax and the partnership in which Defendant Wells was a general partner, S & S Securities ("S & S"). S & S was a New York limited partnership. In 1987, S & S, then a Florida general partnership, and Pax entered into an agreement whereby Pax would train and supervise a trader on the floor of the Chicago Board Options Exchange ("CBOE"). S & S was to give Pax a percentage of the profits made by the trader. In addition, S & S agreed to indemnify Pax for any losses the trader incurred.

The trader incurred large losses in the course of trading. Pax paid for these losses and was partially reimbursed by S & S. With this suit, Wolfson seeks the remainder of Pax's outlay. The case has been dismissed against all defendants but Wells. Wells now brings this motion to dismiss, stay or abstain. For the reasons stated below, Wells' motion to dismiss is denied.

The court, however, grants his motion to stay or abstain.

## I. Motion to Dismiss

Wells asks the court to dismiss the action because of lack of personal jurisdiction. Contrary to Wolfson's claim, Wells has not waived this argument. A lack of personal jurisdiction defense is only waived if a party fails to include the defense either in a motion raising other defenses, a responsive pleading, or an amendment thereof. Fed. R.Civ.P. 12(g), (h). Wells raised this ground as an affirmative defense in his answer and raises it now as the basis for his motion to dismiss. Waiver has not occurred. Nonetheless, Wells does not succeed with the defense. Sufficient evidence exists to support a finding that the court has jurisdiction over Wells' person.

"A federal district court has personal jurisdiction over a party in a diversity suit only if a court of the state in which it sits would have such jurisdiction." *Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 569 (7th Cir.1986). Wells is a non-resident of Illinois. As such, he may be subject to personal jurisdiction in Illinois if he or one acting on his behalf committed an act enumerated in the Illinois long-arm statute, Ill.Rev.Stat. ch. 110 ¶ 2–209 (1989), and that act gave rise to the alleged cause of action. Once the long-arm test is met, the court must also determine whether constitutional due process requirements have been satisfied. *Green v. Advance Ross Electronics Corp*, 86 Ill.2d 431, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981); *Deluxe Ice Cream v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1214 (7th Cir.1984).

Wolfson claims that the court has personal jurisdiction over Wells as a result of S & S having transacted business in the State of Illinois. Wolfson alleges that S & S and Pax entered into a contract. And, Wells, as a general partner in the partnership, is responsible for that obligation. Wells denies the existence of the contract.[1] However, for the purpose of determining personal jurisdiction, "any conflicts in the affidavits are resolved in [Wolfson's] favor." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987).

To determine whether the alleged contract can be considered a transaction of business in Illinois, the court must examine who initiated the transaction, where the contract was negotiated, and where performance of the contract occurred. *Gordon v. Tow*, 148 Ill.App.3d 275, 101 Ill.Dec. 394, 398, 498 N.E.2d 718, 722 (1986). Here, it is not clear which party initiated contract negotiations. The court can surmise from Wolfson's affidavit that the negotiations for the contract took place mainly in Florida. Performance, though, definitely occurred in Illinois. Under the terms of the contract as alleged by Wolfson, Pax had to perform in Illinois since the contract called for the training and supervision of a trader trading on the floor of a Chicago exchange. More importantly, S & S performed in Illinois. S & S paid $61,000, a portion of the trader's losses, to Pax at its Illinois address.

At this point in the litigation, the court will assume that S & S, the New York limited partnership, can be held liable for the alleged contractual obligations incurred by S & S, the Florida partnership. S & S and Pax allegedly entered into the contract when S & S was a Florida general partnership. The information provided thus far to the court supports the conclusion that S & S, the New York limited partnership, became the successor in interest to the rights and obligations of S & S, the Florida general partnership. The name of S & S was carried forward from the Florida partnership to the New York limited partnership. Two of the three general partners in the New York partnership were among the three partners comprising the Florida partnership. Further, S & S, the New York limited partnership, made good on a portion of the losses incurred by the CBOE trader. By its own actions, then, the New York limited partnership demonstrated that it

---

1. Although Wells contends that a contract did not exist, he states in his affidavit that his former partners and Pax could well have had a secret oral agreement. (Wells' affidavit at 3).

was honoring the obligations of the Florida general partnership.

In addition to the contractual agreement, S & S appears to have been involved in another business transaction within Illinois, namely, trading on the CBOE. The contract between Pax and S & S was designed to further the trading activities of a person on the floor of the CBOE. This CBOE trader appears to have been an agent of S & S, as he was trading on the partnership's behalf. Not only was the partnership to receive the trader's profits, it was also to pay the trader's losses. Indeed, when the trader suffered losses, the partnership adopted the trader's actions by acknowledging the losses and providing partial repayment. This trading activity, coupled with the contractual agreement, supports a transaction of a business claim.

 The provisions of the Illinois long-arm statute also require that the cause of action arise from the act set forth as the basis for jurisdiction. In effect, the cause of action must "lie in the wake" of the making or performance of a contact or the transaction of business. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 591 (7th Cir. 1984). That requirement is easily satisfied in this case. The contract alleged as S & S's transaction of business is the very contract upon which Wolfson bases his breach of contract suit. And, the funds sought by Wolfson are reimbursement for the losses flowing directly from the trader's actions on the CBOE. With both these requirements satisfied, Wolfson has established the Illinois long-arm portion of the analysis.

 Constitutional requirements constitute the remaining portion of the analysis. Constitutionally, the question is whether the defendant purposefully established minimum contacts in the forum state such that bringing suit there would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Due process requirements are met when the defendant

engages in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). In this case, S & S established minimum contacts with Illinois by both contracting with Pax for performance in Illinois and engaging a trader to trade on the CBOE on the partnership's behalf. Surely, S & S could have foreseen that it would be called into Illinois court if it did not complete performance in Illinois. After all, S & S had allegedly promised to pay an Illinois partnership in Illinois. In turn, the partnership had promised to perform in Illinois. *See Heritage House Restaurants v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir.1990) ("main factor in the minimum contacts due process analysis is not physical presence in the forum but rather foreseeability"). Additionally, S & S would likely have sought the benefit and protection of Illinois laws should actions have arisen as a result of its trading activities. These contacts are sufficient to satisfy constitutional requirements. The court has personal jurisdiction over the partnership.

 Since the court has jurisdiction over the partnership, jurisdiction also exists over the general partners. "[T]he Illinois contacts that bring the [partnership] into court equally support the assertion of personal jurisdiction over each of its general partners." *Felicia, Ltd. v. Gulf America Barge, Ltd.*, 555 F.Supp. 801, 806 (N.D. Ill.1983). Even though S & S may have entered into the contract before Wells came on board, he still bears responsibility for the agreement. "A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that his liability shall be satisfied only out of partnership property." Unif. Partnership Act § 17, 6 U.L.A. 207 (1969).[2] As a general

---

2. Although Wells was a general partner in a

**limited** partnership, this section still applies in

partner in the New York S & S partnership, Wells can be held liable for the partnership's actions. The court finds, therefore, that it has personal jurisdiction over Wells.[3]

## II. Motion to Stay or Abstain

■ Alternatively, Wells asks the court to stay or abstain from acting on Wolfson's suit because of the existence of parallel proceedings in New York state court. Although the Supreme Court has made clear that abstention by a federal court is the exception rather than the rule, the court finds that a stay is appropriate in this case.

In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Court enumerated exceptional circumstances which, if present, would warrant abstention in cases involving parallel federal and state proceedings. "These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). The circumstances include: (1) the determination of whether the district court or state court first assumed jurisdiction over property; (2) "the inconvenience of the federal forum"; (3) "the desirability of avoiding piecemeal litigation"; and (4) "the order in which jurisdiction was obtained by the concurrent forums". *Colorado River,* 424 U.S. at 818–819, 96 S.Ct. at 1246–47. *See Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 21, 26, 103 S.Ct. 927, 939, 942, 74 L.Ed.2d 765 (1983) (additional factors include adequacy of state court action to protect federal plaintiff's rights and relative progress of the state and federal proceedings).

Before applying the exceptional circumstances test, though, the court must deter-

mine whether parallel proceedings actually exist. "A suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum...." *Calvert Fire Ins. Co. v. Am. Mut. Reins. Co.,* 600 F.2d 1228, 1229 n. 1 (7th Cir.1979). The case before the court and the suit in New York state court have all the earmarks of parallel proceedings. Wells, the lone defendant in the case before the court, is pursuing the New York state suit. The defendant in that case is the plaintiff in this case. Further, both cases boil down to the question of whether a contract existed between S & S and Pax. Wells' suit in New York seeks to recover the monies paid to Pax ostensibly as payment under the contract. Wolfson seeks payment of the remainder of the monies allegedly owed Pax pursuant to the contract. These similarities suggest parallel proceedings.

A review of the circumstances in this case counsels abstention. Both parties would find it inconvenient to be simultaneously litigating suits in New York and Illinois. A stay would have the added benefit of avoiding piecemeal litigation. "In analyzing whether a ... stay will further the interest in avoiding piecemeal litigation, we look ... for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Construction, Inc. v. Brant Construction Co., Inc.,* 780 F.2d 691, 695 (7th Cir.1985). On its face, the suit filed by Wells does not appear to dispose of Wolfson's claim. Yet, both the state and federal case hinge on the existence of a contract with any ensuing liabilities. If the New York state court were to decide that no contract existed between the parties, such a decision would dispose of Wolfson's claims in federal court. Even if the New York court were to decide that a contract did exist, the issue of payment under the contract would inevitably arise in connection with the award of relief. In all likelihood, then, the state case

that "[a] general partner [in a limited partnership] shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners...." Unif. Limited Partnership Act § 9, 6 U.L.A. 586 (1969).

**3.** As the court has found sufficient grounds for personal jurisdiction over Wells based on the activities of S & S, the court need not reach the other alleged basis for jurisdiction—Wells' interest in an Illinois horse stable.

will dispose of the claims presented in the federal case. Additionally, jurisdiction was first obtained in New York state court. The case in New York was filed on March 6, 1990. Discovery as well as other proceedings are currently underway in New York. In comparison, the suit before the court was filed on July 18, 1990. Thus far, the parties have merely submitted pleadings and briefed this motion. Based on a balance of these considerations, the court finds that abstention is warranted in this case. *See Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir.1988) ("Where the validity, enforceability and interpretation of a contract are at issue in both federal and state courts, and the state litigation was commenced first and has progressed substantially towards completion, entry of a stay does not under *Colorado River* constitute an abuse of discretion."); *Rosen v. Com Dev., Inc.*, No. 89 C 9394, 1990 WL 93336, 1990 U.S.Dist. LEXIS 7467 (N.D.Ill. June 19, 1990) (federal action seeking damages for defendant's alleged breach of contract stayed pending resolution of Florida declaratory judgment action). Wells' motion to stay or abstain is granted.[4]

IT IS SO ORDERED.

---

4. Wells also asks the court to dismiss the action as moot since judgment has already been rendered against the partnership and other general partners. However, Wells cannot escape liability merely because judgment has been rendered against others. All partners are jointly and sev-erally liable for everything chargeable to the partnership. Unif. Partnership Act § 15, 6 U.L.A. 174 (1969). Wells will have to take his lumps just like the rest of the named defendants.