597 So.2d 900 (1992)
Daniel J. KELLY, Edward A. Kangas, and Jerry M. Daily, Appellants,
v.
STATE of Florida, DEPARTMENT OF INSURANCE, Appellee.
No. 91-1502.
District Court of Appeal of Florida, Third District.
April 21, 1992.
Holland & Knight, and Daniel S. Pearson, and Thomas G. Schultz, Miami, for appellants.
Adorno & Zeder, and Mitchell R. Bloomberg, Coconut Grove, and Tew & Garcia-Pedrosa, and Joseph L. Rebak, and Matias R. Dorta, Miami, for appellee.
Before HUBBART, NESBITT and GERSTEN, JJ.
PER CURIAM.
Appellants, Daniel J. Kelly, Edward A. Kangas and Jerry M. Daily, appeal the denial of a motion to dismiss for lack of personal jurisdiction. We affirm.
*901 Appellants Kelly, Kangas, and Daily are partners in Touche Ross & Co. (Touche Ross), a national accounting partnership with offices in Florida. Appellee, the Florida Department of Insurance, acting as receiver for International Medical Centers, an insolvent health maintenance organization, sued Touche Ross, two of its Florida partners, and the three appellants, who are non-Florida resident partners.
Appellee's complaint alleged negligence in the preparation of financial statements. Appellants moved to dismiss the complaint alleging Florida lacked personal jurisdiction over nonresident partners. The trial court denied the motion to dismiss, and this appeal followed.
Appellants contend that although Florida has jurisdiction over Florida partners, Florida does not have jurisdiction over nonresident partners having no personal contacts with Florida. Appellee asserts that the long-arm statute has been satisfied here because a partner who is conducting business within the state is the agent of his nonresident partner.
Florida's Long-Arm Statute states:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state.
* * * * * *
§ 48.193, Fla. Stat. (1989).
In Harris v. Bean, 182 So.2d 464 (Fla.3d DCA 1966), a nonresident partner's motion to dismiss for lack of personal jurisdiction was granted by the trial court. This court reversed, holding that the nonresident partner was doing business in Florida since his partner and agent, Bean, was conducting partnership business in the state.
Similarly, in Anson v. Lemperuer, 390 So.2d 478 (Fla. 1st DCA 1980), the court upheld jurisdiction over a New York resident who was a partner in an Illinois partnership that had property holdings and business dealings in Florida. The court found that the claim in question had arisen out of the active conduct of business in Florida under the partnership agreement. The court reasoned that the long-arm statute provided for service in any cause of action arising from various enumerated acts, including the conduct of a business venture in Florida.
In this case, the nonresident partners are also subject to personal jurisdiction in Florida. This cause of action arose out of the active conduct of partnership business in Florida. Thus, appellants are amenable to service under Florida's long-arm statute by virtue of having conducted a business venture in Florida. See § 48.193, Fla. Stat. (1989).
Appellants further contend that the exercise of personal jurisdiction over them would not comport with due process under the United States Constitution. We disagree.
Before a state can assert long-arm jurisdiction over a defendant, due process requires that a defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In more recent cases, the court has described the constitutional touchstone of the minimum contacts analysis as whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
Here, appellants were general partners in a partnership that had offices in Florida and regularly conducted business here. Appellants were not only general partners, *902 but also held high administrative positions within Touche Ross: Kelly was the chairman of the board, Kangas was the managing partner, and Daily was the national director of accounting and auditing.
It is well established law that partners, acting within their authority and in pursuit of partnership business, bind all other partners and act as their agents. Stephens v. Orman, 10 Fla. 9 (1862); Tate v. Clements, 16 Fla. 339 (1878); McCoy v. Boley, 21 Fla. 803 (1886); Proctor v. Hearne, 100 Fla. 1180, 131 So. 173 (1930). It is equally well established that each general partner is personally liable for all partnership obligations. Schleicher, Schumm & Co. v. Walker, 28 Fla. 680, 10 So. 33 (1891); Sheppard v. Reeves & Co., 39 Fla. 53, 21 So. 774 (1897); Hector Supply Co. v. Martin, 130 So.2d 285 (Fla. 3d DCA 1961).
Because appellants were conducting business in Florida through their co-partners, who served as their agents here, and because appellants were personally liable for the partnership debts, appellants should have reasonably expected to be haled into court in Florida.
Further, appellants purposefully directed their activities towards Florida and the alleged injuries arise out of those activities. Burger King, 471 U.S. at 462, 105 S.Ct. at 2174, 85 L.Ed.2d at 528. When Touche Ross chose to operate as a partnership in Florida, opening offices in the state, appellants purposefully availed themselves of the benefits and protections of Florida law. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
There are a number of cases that hold that a nonresident partner can be constitutionally subjected to personal jurisdiction in the forum where the partnership has conducted business. See, e.g., Hibernia National Bank v. Carner, 758 F. Supp. 382 (M.D.La. 1991); Wolfson v. S & S Securities, 756 F. Supp. 374 (N.D.Ill. 1991); Oxford Mall Company v. K & B Mississippi Corporation, 737 F. Supp. 962 (S.D.Miss. 1990); Wichita Federal Savings & Loan Association v. Comark, 586 F. Supp. 940 (S.D.N.Y. 1984), affirmed, 810 F.2d 1161 (2d Cir.1986); Felicia, Ltd. v. Gulf American Barge, Ltd., 555 F. Supp. 801 (N.D.Ill. 1983).
Appellants established sufficient minimum contacts with the State of Florida so that jurisdiction over them would not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. at 310, 66 S.Ct. at 154, 90 L.Ed. at 95. Accordingly, we affirm.
HUBBART and GERSTEN, JJ., concur.
NESBITT, Judge (concurring):
I agree with the court. I write only to comment upon Ytuarte v. Gruner & Jahr Printing & Publishing Co., 935 F.2d 971 (8th Cir.1991) and Sher v. Johnson, 911 F.2d 1357 (9th Cir.1990), which appellants rely upon to support the claim that the extension to nonresident partners of personal jurisdiction does not comport with constitutional requirements of due process.
The eighth and ninth circuits in Ytuarte and Sher did not engage in any complex due process analysis to arrive at their conclusions that personal jurisdiction extended to nonresident partners. The ninth circuit based its analysis on agency principles, while the eighth circuit quickly disposed of plaintiff's argument by stating it was entirely without merit. Sher, 911 F.2d at 1366; Ytuarte, 935 F.2d at 972-73.
Unlike those cases, it was established below that the three nonresident partners, who challenged the trial court's exercise of personal jurisdiction, had joined the national accounting partnership knowing that it conducted business in Florida. Furthermore, they personally received income from partnership distributions which were generated in this state. These acts were calculated and deliberate, and demonstrated that defendants intended to obtain and expected to receive an economic benefit from conducting partnership business in Florida. There is nothing to suggest that the "quality and nature" of these partners' relationship with Florida was "random," "fortuitous," or "attenuated." Hanson v. Denckla, 357 U.S. 235, 253-55, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958); see also Burger King, 471 U.S. at 480, 105 S.Ct. at *903 2186, 85 L.Ed.2d at 545-46; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797 (1984). Thus, it can hardly be said that these defendants did not "reasonably anticipate being haled into court" here. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980).