DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

LEVEL 8 MANAGEMENT, INC., and
PIERRE ACCOUNTING, P.C.,

Appellants,

v.

WILDFLOWER LEGACY AND WEALTH PLANNING, LLC,

Appellee.

No. 2D2023-2070

_____

July 17, 2024

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Hillsborough County; Robert A. Bauman, Judge.

Jonathan B. Sbar, Jodi L. Corrigan, and Andrea K. Holder of Rocke,
McLean & Sbar, P.A., Tampa, for Appellants.

Thomas G. Long of Gunster, Yoakley & Stewart, P.A., Tampa, for
Appellee.

SMITH, Judge.

Non-Florida corporations Level 8 Management, Inc., and Pierre
Accounting, P.C., appeal the trial court's order denying their motion to
dismiss the complaint filed by Wildflower Legacy and Wealth Planning,
LLC, a Florida limited liability company.  Because Level 8 and Pierre did

not engage in a business in Florida, they do not fall within the reach of Florida's long-arm statute and the trial court lacked jurisdiction over them; we reverse and remand with instructions for the trial court to dismiss the action.

I.

Wildflower commenced this action against Level 8 and Pierre for breach of contract, breach of fiduciary duty, defamation, and demand for accounting after a business venture fallout. Wildflower is a Florida limited liability company wholly owned by Gregory F. Wilder, a Florida licensed attorney and certified public account (CPA). Level 8 is a California corporation with its principal place of business in California; Pierre is a Texas company with its principal place of business in Texas.

Mr. Wilder is the mastermind behind a tax consulting business venture that he created to help employers navigate the new IRS Employee Retention Credit (ERC) tax program legislation passed during the COVID pandemic. Mr. Wilder created marketing materials, pricing models, engagement letters, tax opinion templates, and training models for the program. During the relevant period, Wildflower maintained its principal office in Texas, where Mr. Wilder has resided since 2017. On occasion, Mr. Wilder would travel to Florida and work remotely.

The complaint alleges that in the spring of 2021, Wildflower formed a general partnership[1] with Level 8. Wildflower formed a separate general partnership with Pierre. These general partnerships (Legacy GPs)

---

[1] The trial court referred to the relationship of the parties as a "business venture." *See* § 48.193(1)(a)1, Fla. Stat. (2021). We need not determine whether the relationship was a general partnership in deciding whether personal jurisdiction is satisfied under Florida's long-arm statute. However, we refer to the business venture as a general partnership because the complaint uses this terminology.

2

were formed so that Level 8 and Pierre could serve Wildflower clients by providing accounting, payroll, and tax return services related to the ERC program. There is no agreement or writing memorializing the Legacy GPs. Initially, Wildflower shared net revenues derived from its clients equally (fifty-fifty) with each Legacy GP. Each client of the respective Legacy GP entered into a joint engagement letter signed by Wildflower and either Level 8 or Pierre, as the case may be. The engagement letters contain a dispute resolution clause that provides that disputes were first to be resolved by mediation and then by binding arbitration, with arbitration proceedings to take place in Florida or Texas and governed under Florida or Texas law.[2]

It is uncontested that during the relevant time period, neither Wildflower, Level 8, nor Pierre ever maintained an office in Florida. Saman Derakhshan, Level 8's principal, testified that Level 8 has no connections with Florida. Mr. Derakhshan met Mr. Wilder only in California, and all communications were sent to Wildflower in Texas. Pierre is operated by Eric Pierre, who likewise testified that Pierre has no connections to Florida.

Wildflower alleges that in November 2021 it formed a single new general partnership with both Level 8 and Pierre in which they agreed to share the net revenue from new clients signed after November 27, 2021, equally amongst the three entities—one-third each. Net revenue from clients signed prior to November 27, 2021—the Legacy GP clients—would fall under the prior Legacy GP revenue sharing agreements. All three entities—Wildflower, Level 8, and Pierre—signed most of the engagement

---

[2] It is undisputed that the breach alleged by Wildflower in its complaint does not concern a dispute with a client or breach of any client engagement letter. Thus, the fact that the client engagement letters require arbitration in Florida or Texas is of no consequence here.

letters after November 27, 2021. The new general partnership, like the Legacy GPs, was not reduced to writing.

The new general partnership was short lived, and on January 27, 2022, Level 8 and Pierre wrote Wildflower: "This letter serves [sic] memorialize the termination of the GP formed on November 27, 2021, by Pierre, Wildflower, and Level 8. Termination was communicated to the parties informally on December 21, 2021." The termination letter went on to conclude: "Level 8 and Pierre are taking over the GP with a combined ownership of 66% and removing Wildflower from the [GP], as of December 21, 2021. . . ."

In the complaint Wildflower alleges that it was "frozen" out from completing work for the Legacy GP clients as well as new clients signed after November 27, 2021, and deprived of monies due under all three partnerships. Wildflower also alleges that Level 8 and Pierre have made false and damaging statements to both Legacy GP clients and new general partnership clients.

Relevant to this appeal, Wildflower alleges in its complaint that Level 8 and Pierre subjected themselves to Florida's long-arm jurisdiction by engaging in a business venture within the state. *See* § 48.193(1)(a)1, Fla. Stat. (2021).[3] Specifically, Wildflower alleges:

(i)     [Level 8 and Pierre] carried on a business or business

---

[3] Wildflower also alleges jurisdictional allegations under section 48.193(1)(a)2 (providing for jurisdiction over any person, "whether or not a citizen or resident of this state, . . . for any cause of action arising from . . . [c]ommitting a tortious act within this state"). While the motion to dismiss also raised lack of personal jurisdiction under section 48.193(1)(a)2 based upon tortious acts, the trial court did not rule on the issue, and so it is not properly before us for review. *See Sierra ex rel. Sierra v. Pub. Health Tr. of Dade Cnty.*, 661 So. 2d 1296, 1298 (Fla. 3d DCA 1995) ("Appellate courts may not decide issues that were not ruled on by the trial court in the first instance.").

4

venture within the [S]tate of Florida by engaging in multiple general partnerships with a Florida limited liability company;

(ii)     The client engagement letters that were the subject of this dispute were issued by a Florida CPA firm and were governed by terms and conditions referencing Florida law and requiring dispute resolution of client engagements in Florida; and

(iii)     [Level 8 and Pierre] committed tortious acts within the state of Florida by engaging in numerous instances of tortious conduct that damaged Wildflower, a Florida limited liability company, and its owner who is licensed in the [S]tate of Florida as both a [CPA] and a [lawyer].

Level 8 and Pierre filed their motion to dismiss the complaint challenging personal jurisdiction arguing that as nonresident defendants they have insufficient contacts with Florida to support personal jurisdiction under section 48.193(1)(a)1.

At the evidentiary hearing on the motion to dismiss,[4] Mr. Wilder, Mr. Derakhshan, and Mr. Pierre all testified that none of their businesses had offices, employees, or clients in Florida. Mr. Wilder testified that he travelled infrequently to Florida and would work remotely while in Florida; however, his Florida trips were not for Wildflower business. While in Florida Mr. Wilder met "with people who never became clients." He further testified that he once had a Zoom call with Mr. Pierre and a potential client in Palm Beach and that he met with Mr. Pierre in Florida

---

[4] The trial court properly held an evidentiary hearing because Level 8 and Pierre disputed, via affidavits, that they were carrying on a business or business venture within the State of Florida. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989) (holding that trial court is required to hold an evidentiary hearing where the jurisdictional allegations are disputed with affidavits, in which case the burden then shifts back to the plaintiff to establish personal jurisdiction).

with a referral source to potentially develop general partnership business. On the other hand, Mr. Pierre had a different account of his visit to Florida. He testified that the visit was a social one to attend a football game and that while there he and Mr. Wilder went to dinner where they discussed business unrelated to Wildflower and the general partnership—specifically, they discussed conservation easements. Mr. Pierre also testified that he mailed checks to Mr. Wilder in Texas.[5] Mr. Wilder acknowledged that the checks were sent to Texas but stated that the checks were deposited into Wildflower's Chase account, which was opened in Florida. Mr. Wilder testified that Chase Bank has various locations throughout the United States, including Texas, but he could only speculate whether any of the checks received from either Level 8 or Pierre were ever deposited while he was in Florida.

At the conclusion of the evidentiary hearing the trial court denied the motion to dismiss, finding that Level 8 and Pierre "engaged in a 'business venture' that placed them within the reach of Florida's long-arm statute" and that there were sufficient minimum contacts with Florida to satisfy due process concerns. In its order, the trial court found significant that Level 8 and Pierre chose to enter into a business arrangement with a Florida-registered company, that Wildflower sought to develop clients who resided in Florida through referral sources and networking, and that Mr. Pierre met with Mr. Wilder in Florida regarding a potential referral source for the business venture. This appeal followed.

## II.

We review the denial of the motion to dismiss based on lack of

---

[5] The trial court did not find Mr. Pierre's testimony persuasive on this issue.

6

personal jurisdiction de novo, while keeping in mind that Florida's long-arm statute must be strictly construed. *See Schwartzberg v. Knobloch*, 98 So. 3d 173, 180 (Fla. 2d DCA 2012).

In *Venetian Salami*, 554 So. 2d 499, 502-03 (Fla. 1989), the supreme court held that for a Florida court to exercise personal jurisdiction over a foreign defendant, the plaintiff must satisfy both the statutory requirements of Florida's long-arm statute and the federal requirement of minimum contacts with the state to satisfy due process. The court held:

> In determining whether long-arm jurisdiction is appropriate in a given case, two inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of [Florida's long-arm] statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.

*Id.* at 502 (quoting *Unger v. Publisher Entry Serv., Inc.*, 513 So. 2d 674, 675 (Fla. 5th DCA 1987)); *see also Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 552 (Fla. 2d DCA 2017) ("The trial court must first determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. If it does, then the trial court must determine whether sufficient minimum contacts are shown to satisfy due process requirements." (citation omitted) (citing *Rautenberg v. Falz*, 193 So. 3d 924, 928 (Fla. 2d DCA 2016))); *Canale v. Rubin*, 20 So. 3d 463, 465 (Fla. 2d DCA 2009) ("A Florida court conducts a two-step inquiry when determining whether jurisdiction under Florida's long-arm statute is proper in a given case. Initially, it must determine whether the complaint alleges jurisdictional facts sufficient to invoke the statute. If so, the court must then examine whether the defendant has sufficient 'minimum contacts' with Florida in

7

order to satisfy due process requirements." (citing *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000))).

The court in *Venetian Salami* explained that "[b]y enacting section 48.193, the legislature has determined the requisite basis for obtaining jurisdiction over nonresident defendants as far as Florida is concerned. It has not specifically addressed whether the federal constitutional requirement of minimum contacts has been met." *Venetian Salami,* 544 So. 2d at 500. Federal courts have

> held that in order to subject a defendant to an in personam judgment when he is not present within the territory of the forum, due process requires that the defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317-18 (1945)). The court noted "the test is whether the defendant's conduct in connection with the forum state is 'such that he should reasonably anticipate being haled into court there.' " *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980)); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe*, 326 U.S. at 319)); *Stonepeak*, 231 So. 3d at 557 (explaining that the purpose of the long-arm statute is "to regard nonresidents who have availed themselves of the privilege of 'dealing in goods, services, or property, whether in a professional or nonprofessional capacity, within the [s]tate in anticipation of economic gain,' as operating a business or business venture" (quoting *Labbee v. Harrington*, 913 So. 2d 679, 683 (Fla. 3d DCA 2005))).

8

The court in *Venetian Salami* also detailed the procedure to be used when a foreign defendant objects to personal jurisdiction. *See Venetian Salami*, 544 So. 2d at 502. "Initially, the plaintiff bears the burden of pleading a basis for jurisdiction under section 48.193." *Hilltopper Holding Corp. v. Est. of Cutchin ex rel. Engle*, 955 So. 2d 598, 601 (Fla. 2d DCA 2007) (citing *Venetian Salami*, 544 So. 2d at 502). If the plaintiff meets this initial pleading requirement, the burden shifts to the foreign defendant to contest, by sworn proof, the jurisdictional facts as alleged by the plaintiff. *Id*. The burden then shifts back to the plaintiff to prove jurisdiction. *Cap. One Fin. Corp. v. Miller*, 709 So. 2d 639, 640 (Fla. 2d DCA 1998) (quoting *Venetian Salami*, 544 So. 2d at 502).

III.

*A. General Jurisdiction vs. Specific Jurisdiction*

In *Canale*, this court explained:

> The Florida long-arm statute provides for two types of personal jurisdiction: general, § 48.193(2), and specific, § 48.193(1). General jurisdiction arises when the defendant engages in substantial and not isolated activities in Florida. Thus, for example, a corporation with many facilities or activities in Florida has purposefully directed its activities at this state and therefore is subject to suit here on any claim. *Christus St. Joseph's Health Sys. v. Witt Biomedical Corp.*, 805 So. 2d 1050, 1052 (Fla. 5th DCA 2002). General jurisdiction arises from a party's contacts with Florida that are unrelated to the litigation. *See Madara v. Hall*, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990). Specific jurisdiction, on the other hand, requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as "connexity." *Wendt [v. Horowitz]*, 822 So. 2d [1252, 1260 (Fla. 2002)].

20 So. 3d at 465-66.

Wildflower has not alleged general jurisdiction under section 48.193(2), and thus we need not address the intricacies of that possible

9

path to jurisdiction. Instead, Wildflower's complaint alleges facts that might support specific jurisdiction in Florida based on "operating, conducting, engaging in, or carrying on a business or business venture in this state." § 48.193(1)(a)1. The specific jurisdiction statute requires that the cause of action arise from the defendant's contacts with the state. *See Wendt*, 822 So. 2d at 1260. "This predicate finding is necessary because of the connexity requirement contained in section 48.193(1)." *Id.* (citing section 48.193(1), which provides "[a]ny person . . . who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action <u>arising from the doing of the following acts</u>.")); *see also Stonepeak*, 231 So. 3d at 552 ("Specific jurisdiction also 'requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as 'connexity.' " (quoting *Canale*, 20 So. 3d at 466)).

B.      *First Inquiry—Specific Jurisdiction under Florida's Long-Arm Statute*

"The trial court must first determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute." *Stonepeak*, 231 So. 3d at 552. Initially we note that the face of Wildflower's complaint, as supported by Mr. Wilder's declaration, raises sufficient jurisdictional allegations implicating specific jurisdiction under section 48.193(1)(a)1, which provides that "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state" subjects a person to the jurisdiction of the Florida courts. *See Sutton v. Smith*, 603 So. 2d 693, 698 (Fla. 1st DCA 1992) (accepting the verified complaint as satisfying the affidavit requirement where those allegations fairly met the defendant's contentions in the opposing affidavit). Level 8 and Pierre then sufficiently refuted Wildflower's

10

jurisdictional facts as alleged in the complaint, and the burden shifted back to Wildflower to prove jurisdiction at the evidentiary hearing. *See Hilltopper*, 955 So. 2d at 601-02. Accordingly, in order to satisfy the first step of the *Venetian Salami* test, Wildflower had to demonstrate that (1) Level 8 and Pierre engaged in a business venture in Florida under section 48.139(1)(a)1 and (2) there was a causal connection between Level 8 and Pierre's activities in Florida and Wildflower's cause of action. *See Stonepeak*, 231 So. 3d at 552 ("Specific jurisdiction also 'requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as 'connexity.' " (quoting *Canale*, 20 So. 3d at 466)).

In its complaint, Wildflower alleged that Level 8 and Pierre were engaged in a business venture in Florida.

> For purposes of section 48.193(1)(a)(1), to demonstrate that a nonresident defendant is "carrying on business" the defendant's activities "must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed.Appx. 779, 783 (11th Cir. 2014) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005)). Factors to consider in making this determination "include: (1) 'the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.' " *Id.* at 784 (quoting *Horizon Aggressive Growth*, 421 F.3d at 1167).

*Stonepeak*, 231 So. 3d at 555. *But see Kapila v. RJPT, Ltd.*, 357 So. 3d 241, 247 (Fla. 2d DCA) (following *Stonepeak* and explaining that these factors are not necessarily dispositive), *review denied*, No. SC2023-0862, 2023 WL 6785604 (Fla. Oct. 13, 2023).

We apply the *Stonepeak* factors here. First, it is undisputed that none of the three businesses had offices in Florida during the relevant

time period. *See Stonepeak*, 231 So. 3d at 555. Second, neither Level 8 nor Pierre were licensed to do business in Florida. *See Id.* Nor was there any evidence that would satisfy the third or fourth factors: the evidence presented was that there were no Florida clients served and, therefore, no monies gleaned from any clients from Florida.

However, as we noted in *Kapila*, the *Stonepeak* factors are not an all-inclusive list. *Kapila,* 357 So. 3d at 247. The business activity alleged by Wildflower to have occurred in Florida concerns the solicitation of prospective clients. Whether solicitation of business in Florida is sufficient to subject a foreign defendant to personal jurisdiction requires the "evaluation of the quantity as well as the quality of the solicitation." *Reader's Digest Ass'n v. State*, 251 So. 2d 552, 555 (Fla. 1st DCA 1971); *see also, Hubsch Mfg. Co. v. Freeway Washer & Stamping Co.,* 205 So. 2d 337, 338 (Fla. 1st DCA 1967) (holding that the company that sent agents into the state to promote company business "coupled with the actual sales and deliveries made in Florida" was subject to Florida's long-arm jurisdiction); *Holiday Inns, Inc. v. Jamison,* 353 So. 2d 1269, 1270 (Fla. 1st DCA 1978) ("doubt[ing]" that allegations of solicitation activities alone are sufficient to establish carrying on a business or business venture).

In *Reader's Digest,* the solicitation of clients using mail and advertising material was enough to expose the nonresident defendant to personal jurisdiction because it engaged in a "massive solicitation" campaign targeting "as many as 50 million people" throughout the United States, including 10,000 in Florida. 251 So. 2d at 553, 556.

In this case, after evaluating the quantity and the quality of the isolated solicitation activities, we cannot say that the solicitation rose to the level that would satisfy Florida's long-arm statute. The solicitation

amounted to less than a handful of potential clients, a meeting with a potential referral source, a Zoom call, and a dinner and football game. No clients were cultivated from these efforts, and there was no economic benefit derived from this solicitation.

Wildflower successfully argued below that Level 8 and Pierre engaged in a business venture in Florida by virtue of their partnership with Wildflower, a Florida-registered business. The trial court relied upon *Kelly v. Florida Department of Insurance*, 597 So. 2d 900, 902 (Fla. 3d DCA 1992), and *Estate of Vernon v. Bailey*, 609 So. 2d 128, 129-30 (Fla. 4th DCA 1992), to find that Level 8 and Pierre conducted business through their copartner, Wildflower, and that because one of the general partners is operating, conducting, engaging in, or carrying on the partnership business in Florida, all general partners are subject to the personal jurisdiction of Florida regardless of their activities in the state. *See Kelly*, 597 So. 2d at 902 (holding that copartners were conducting business in Florida and because all partners were personally liable for partnership debt, Florida courts had jurisdiction over all partners); *see also Vernon*, 609 So. 2d at 129-30 (approving *Kelly* and holding that "if the partnership has sufficient contacts with the forum state to subject it to the forum's jurisdiction, then the nonresident partners are equally under the forum state's jurisdiction by virtue of the partnership's contacts"). Level 8 and Pierre contend that *Kelly* and *Vernon* are distinguishable, and we agree. The case before us presents on different footing.

In *Kelly*, nonresident partners of a national accounting firm that *operated in Florida* objected to personal jurisdiction on the grounds that they, individually, had no contact with Florida. 597 So. 2d at 901 (emphasis added). These nonresident partners joined the firm knowing

that the firm operated in Florida and received an economic benefit in the form of partnership distributions from revenue generated from the firm's business in Florida. *Id.* at 902 (Nesbitt, J., concurring). Accordingly, the Third District held that "because [the nonresident partners] were conducting business in Florida through their co-partners, who served as their agents here, and because [the nonresident partners] were personally liable for partnership debts, [the nonresident partners] should have reasonably expected to be haled into court in Florida." *Id.* (majority opinion).

In *Kelly* the accounting firm also undisputedly engaged in business in Florida as it had offices in Florida. 597 So. 2d at 901. Moreover, its nonresident partners shared in partnership debts and derived an economic benefit from that Florida business. *Id.* at 902; *see also Labbee*, 913 So. 2d at 683 (holding that the intent of the long-arm statute is "to regard nonresidents who have availed themselves of the privilege of 'dealing in goods, services, or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain,' as operating a business or business venture" (quoting *DeVaney v. Rumsch*, 228 So. 2d 904, 907 (Fla. 1969))).

In *Vernon*, the estate sued the New York law firm handling its Florida probate estate. 609 So. 2d at 129. The law firm had partners in Florida and outside of Florida. While jurisdiction over the partnership was conceded, the individual nonresident partners objected to personal jurisdiction. The estate's argument for personal jurisdiction over the individual nonresident partners of the law firm was two-fold. First, the estate argued that the actions of the partnership in Florida bound the individual nonresident partners under general partnership principles. Second, the estate argued that the individual nonresident partners were

14

subject to personal jurisdiction where they rendered legal services to the probate estate, which was pending in a Florida court. *Id.* at 130. The Fourth District held that these actions subjected the nonresident partners to personal jurisdiction under Florida's long-arm statute and satisfied the minimum contacts requirement under *Venetian Salami. Id.*

In *Vernon*, the law firm had offices in Florida and was undisputedly engaging in business in Florida. To be sure, it was conceded that the partnership was subject to Florida jurisdiction. *Id.* at 129. And the individual nonresident partners were performing services to a Florida estate that was being probated in a Florida court. *Id.* at 130. That is not the case here.

In this case, while Wildflower argues that Level 8 and Pierre engaged in a business venture in Florida by virtue of their partnership with Wildflower, the evidence presented does not support the finding that Wildflower was doing any business in Florida. Simply partnering with a company that is licensed in Florida is not enough to confer jurisdiction upon the court. And neither *Kelly* nor *Vernon* stand for this proposition. *See generally Vernon,* 609 So. 2d 128; *Kelly*, 597 So. 2d 900. While Mr. Wilder testified that he traveled to Florida during the relevant time period, much of Mr. Wilder's travels to Florida were unrelated to the business venture. *See, e.g.*, *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019) (holding that the defendant did not engage in business in Florida under Florida's long-arm statute where the defendant had an isolated meeting in Florida for convenience purposes and the company's Florida sales only amounted to seven percent of the company's revenue). But for some isolated activity in Florida, Wildflower also conducted much of its relevant business in Texas prior to the parties' fallout. Mr. Wilder has not resided in Florida

15

since 2017. Mr. Wilder testified that he visited Florida and would conduct partnership business remotely when he came to Florida, but he did not travel to Florida for the purpose of engaging in business in Florida. Wildflower had no office in Florida and no employees in Florida.[6] In fact, Wildflower's principal place of business was in Texas, where Mr. Wilder resides.

Any contacts with the State of Florida were limited and inconsequential; most, if not all, of the business done by any of the three corporations was done outside of the State of Florida. The majority of the parties' business meetings were held virtually and not in Florida. Level 8 and Pierre have no offices, employees, or clients in Florida and are not licensed to do business in Florida. Level 8 and Pierre conduct business from their respective states—California and Texas. Wildflower, however, is a Florida limited liability company, and Mr. Wilder, its principal, is a licensed Florida attorney and CPA. But Mr. Derakhshan met with Wildflower representatives in California for business and testified that he had no contacts with Florida. Mr. Pierre joined Mr. Wilder on a Zoom call with a resident from Florida and traveled to Florida on another occasion. The purpose of the Florida visit was contested, but there is no dispute that no client or business was procured from that visit. Despite isolated meetings with potential referral sources, no Florida clients were developed, and it is unclear what, if any, benefit came from these referral sources. There was no evidence that any revenue was garnered from Florida clients.

Therefore, unlike *Kelly* and *Vernon*, it cannot be said that Level 8

___

[6] Despite the trial court's finding that Wildflower had employees in Florida, the record evidence shows that Wildflower did not have employees in Florida until the fall of 2022—after the parties' business relationship fell apart. A fact Wildflower does not dispute in its briefing.

16

and Pierre went into this business relationship knowing that they would be haled into court based upon the fact that Wildflower is a Florida limited liability company, especially where none of the partnerships— either the Legacy GPs or the new GP—was regularly conducting business in this state. *See Venetian Salami*, 554 So. 2d at 500-01. The isolated activities of Wildflower in Florida—after the business ventures were created—would not amount to engaging in business in Florida under Florida's long-arm statute. Therefore, the trial court's reliance on *Kelly* and *Vernon* was misplaced.

Because Wildflower did not establish that Level 8 or Pierre engaged in a business venture in Florida under section 48.193(1)(a)1, we reverse the order denying the motion to dismiss for lack of personal jurisdiction and remand for the trial court to dismiss the case. Based on our conclusion that Wildflower did not establish a statutory basis for personal jurisdiction under section 48.193, we do not reach the issues of whether it satisfied the connexity requirement or the federal minimum standards due process requirements. *See Stonepeak*, 231 So. 3d at 558; *Rautenberg*, 139 So. 3d at 930 ("When the plaintiff fails to meet the first prong of the *Venetian Salami* test, the court 'need not consider the minimum contacts aspect.' " (quoting *PK Computs., Inc. v. Indep. Travel Agencies of Am., Inc.*, 656 So. 2d 254, 255 (Fla. 4th DCA 1995))).

Reversed and remanded with instructions.

NORTHCUTT and KHOUZAM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.