**ROCKWELL INTERNATIONAL CORPORATION, Plaintiff,**

v.

**ELTRA CORPORATION, Defendant.**

No. 81 C 3942.

United States District Court,
N. D. Illinois, E. D.

April 21, 1982.

John Belz, Theodore W. Anderson, Allen J. Sternstein, Neuman, Williams, Anderson & Olson, Chicago, Ill., for plaintiff.

Philip W. Tone, Jerold S. Solovy, Jenner & Block, Chicago, Ill., William J. Gilbreth, Laurence S. Rogers, Fish & Neave, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Rockwell International Corporation ("Rockwell") sues Eltra Corporation ("Eltra") for infringement of two United States patents:

(1) Patent No. 4,029,947 ("Patent 947"), issued June 14, 1977 to Rockwell as assignee of co-inventors Gregory Evans and Robert Caswell, and

(2) U. S. Patent Re. 30,679 ("Patent 679"), a July 14, 1981 reissue of Patent 947 to Rockwell.

Eltra has moved under 28 U.S.C. § 1404(a) that this action be transferred to the United States District Court for the Central District of California. For the reasons stated in this memorandum opinion and order Eltra's motion is granted.

### Facts

Graphic Systems Division ("MGD," from its pre-Rockwell-acquisition corporate name Miehle-Goss-Dexter) is an Illinois based wholly owned subsidiary[1] of Rockwell. In the early 1970s MGD decided to enter the "pre-press field," a decision that resulted in the development of the Metro-Set photo-typesetter, the device incorporating Patents 947 and 679.

MGD did not have the technical ability to develop Metro-Set. But under Rockwell's Technology Transfer Program ("TTP") one part of the Rockwell organization can avail itself of technological expertise in another part, in much the same way as hiring an outside consultant. MGD originated the idea for development, defined specifications and submitted them to engineers in Rockwell's Autonetics Division for development of an appropriate device. Metro-Set was thus developed by Rockwell engineers located in its California facility. Their work was done for MGD on a "contractual basis," with MGD "paying" for the services and overseeing the work.

When Metro-Set was completed Rockwell obtained Patent 947 and turned the device over to MGD in Chicago. MGD then handled all sales, service and further engineering. After a number of years of successful sales, MGD sold the Metro-Set product line to Information International, Inc. ("Triple-I"), a California corporation. Triple-I became executory owner of the patents, to take effect after this action is completed. All negotiations for the sale, and all executions of sale documents, took place in Chicago.

There are thus four sets of actors involved in this action. Eltra, the alleged infringer, is a New York based corporation with nine regional sales offices, including locations in Illinois and California. Metro-Set was invented for MGD by Rockwell employees in California. Metro-Set was then manufactured and sold by MGD in Illinois. Both patents are being used by California-based Triple-I, their equitable owner.

### Section 1404(a) Principles

■ Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Rockwell first contends the action originally could not have been brought in California. On that score 28 U.S.C. § 1400(b) provides:

---

1. Despite its being termed a "division," MGD is apparently separately incorporated.

> Any civil action for patent infringement may be brought in the judicial district ... where the defendant has committed acts of infringement and has a regular and established place of business.

Eltra has filed the affidavit of its Los Angeles based Regional Sales Manager Elvin George Kyle, demonstrating amply that the Central District of California meets the venue test:

(1) Eltra's Mergenthaler Linotype Company division has maintained a regional sales office in the Central District of California (Culver City) since at least 1972.

(2) That office has since at least 1981 sold and serviced the typesetters that allegedly infringe Rockwell's patents.

■ Because both this district and the proposed transferee district are thus available forums, it becomes necessary to determine which better serves the Section 1404(a) considerations: convenience of parties and witnesses and the interest of justice. Those standards are similar but not identical to those that control forum non conveniens decisions, as defined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). As the Supreme Court said in *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955):

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on *forum non conveniens*. As this Court said in *Ex parte Collett*, 337 U.S. 55–61 [69 S.Ct. 944–947, 93 L.Ed. 1207], Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of *forum non conveniens*, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer.

> When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

And the Court has recently reconfirmed that distinction in *Piper Aircraft Co. v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 264–65, 70 L.Ed.2d 419 (1981).[2]

■ One of the more significant changes wrought by Section 1404(a) is in the weight accorded to a plaintiff's choice of forum, *Y⁴ Design, Ltd. v. Regensteiner Publishing Enterprises, Inc.*, 428 F.Supp. 1067, 1070 (S.D. N.Y.1977):

> Plaintiffs' choice of forum, while still an important factor in the determination of a motion to transfer, is no longer given the overriding consideration it may have once enjoyed under the former doctrine of *forum non conveniens*.

1 Moore's Federal Practice ¶ 0.145[5] at 1616–18. Thus while the movant still retains the burden of making a clear showing why a transfer is appropriate, plaintiff's choice of forum is but one factor to consider, *Coats Co. v. Vulcan Equipment Co.*, 459 F.Supp. 654, 657 (N.D.Ill.1978):

> In short, before a proper determination of convenience can be made under § 1404(a), close and careful consideration must be given to all of the relevant facts and circumstances.

Here the parties have focused primarily on location of witnesses.[3] Eltra emphasizes

---

**2.** In two brief references to Section 1404(a) our Court of Appeals has noted that it "was drafted in accordance with the doctrine of *forum non conveniens*," *Butterick Co. v. Will*, 316 F.2d 111, 112 n.2 (7th Cir. 1963) and that it "embodies the non-jurisdictional doctrine of *forum non conveniens* ...," *Fitzsimmons v. Barton*, 589 F.2d 330, 334 (7th Cir. 1978). In light of the

Supreme Court teachings, those statements must be read only as indicating the two doctrines embody *similar* principles.

**3.** Except for the factors relating to witnesses, convenience of the parties is essentially evenly balanced or (taking Triple-I into account) perhaps tipped slightly to California. "Interest of justice" really follows the other considerations

key witnesses located in California and not subject to compulsory subpoenas in Illinois, forcing Eltra to rely on deposition testimony if the action is kept here. Rockwell, on the other hand, contends a like number of important witnesses reside in Illinois.

■ There is however a substantial difference in the factual underpinning for the parties' contentions. Eltra points to California residents Gregory Evans and Robert Caswell (co-inventors of the Patent), Jaroslav Terleckyj (MGD's manager of the project that led to the development of Metro-Set), Roger duPlessis, T. E. Martin, R. Scot Clark and Alfred Fenaughty. All are important witnesses at least on Eltra's related claims of anticipation by the SEACO prior art and fraud on the Patent and Trademark Office.[4] Under those circumstances the live testimony of those witnesses would be far superior to the paper record represented by depositions (or to the possible alternative of videotaped depositions).

■ Triple-I's California situs is also significant, though it is not formally a party. It is true that MGD will sustain the immediate economic benefits and burdens of this action (having reserved them under the sale contract with Triple-I). But if Rockwell were to lose this action, the principles of defensive collateral estoppel (*Blonder-Tongue Laboratories, Inc. v. University of Illinois*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)) would destroy the value of the Patents in Triple-I's hands.

■ In short, Eltra has presented clear and compelling reasons for transfer to California. It has discharged its burden of overcoming Rockwell's choice of forum. And Rockwell has advanced nothing of sig-

nificance to place in the other scale. Its principal argument, that most MGD officials involved in Metro-Set are located in Illinois, is unpersuasive:

(1) All but two of the MGD officials it lists are still MGD employees. Rockwell can thus use their live testimony in any forum if it chooses.

(2) Rockwell is impermissibly vague on the content and relevance of the testimony of the MGD people. It simply says in a footnote (Memorandum 10):

> Each of these witnesses ... can testify, to the extent necessary and relevant, relating to one or more of the following areas: the significance of the contribution by the Metro-Set typesetter to the industry; the sales and/or commercial success of the Metro-Set typesetter; service of the Metro-Set typesetter; and the negotiations preceding and the details of the MGD/Triple-I sales agreement.

Of those items the last two seem irrelevant, while the others are generally of secondary importance.

Under the circumstances, if those witnesses are unwilling to travel to California their deposition testimony should be adequate. Indeed Rockwell's sketchy presentation indicates their testimony would likely be duplicative, with the testimony of a few perhaps sufficing.

Whatever balancing formula is appropriate, then, Eltra must prevail. Convenience of the parties weighs in favor of California if anything, and the convenience of witnesses plainly does. "Interest of justice" requires no different result.[5]

rather than constituting a separate factor in this case.

4. Rockwell argues Eltra cannot assert those claims because it did not accept the invitation to do battle in the reissue proceeding that resulted in Patent 679. This Court disagrees, for reasons expressed in such decisions as *PIC, Inc. v. Prescon Corp.*, 485 F.Supp. 1302, 1304-13 (D.Del.1980); *cf. Mooney v. Brunswick Corp.*, 663 F.2d 724 (7th Cir. 1981).

5. Two factors urged by the litigants have not been deemed relevant by this Court. First, Eltra has filed a declaratory judgment action in California concerning the Patents. But it cannot so bootstrap itself into a California venue. Second, both parties have argued over location of documents (Rockwell has moved them here from California in preparation for this litigation). Clearly they can readily be returned to California or retained here, as the other factors would indicate appropriate.

### Conclusion

Eltra's Section 1404(a) motion is granted. This action is transferred to the United States District Court for the Central District of California.[6]

---

6. Still pending is Rockwell's just-fully-briefed petition for fees under Fed.R.Civ.P. 37. Because this Court's ruling on discovery involved no real complexity and the fees petition poses the really substantive issues, the transferee court is equally capable of deciding that matter. Jurisdiction of a court that has granted a motion to transfer is a troublesome question, so this Court will leave the fee petition to the transferee court. See this Court's opinion in *Kendall Co. v. Direct Image Corp.*, No. 81 C 4547 (N.D.Ill. Oct. 30, 1981).