**FELICIA, LTD., Plaintiff,**

v.

**GULF AMERICAN BARGE, LTD., Joseph Large, Kay Large and Unknown Partners of Gulf American Barge, Ltd., Defendants.**

**No. 82 C 6401.**

United States District Court,
N.D. Illinois, E.D.

Jan. 19, 1983.

---

Thomas W. Speckman, Burr E. Anderson, Speckman & Trittipo, Ltd., Chicago, Ill., for plaintiff.

Marvin F. Metge, Bruce C. Spitzer, Gorham, Metge, Bowman & Hourigan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Illinois corporation Felicia, Ltd. ("Felicia") brings this breach of contract action against Florida partnership Gulf American Barge, Ltd. ("Gulf American") and its individual partners. Felicia contends Gulf American, by refusing to make rental payments and provide a performance bond, violated an agreement captioned "Bare Barge Charter Party With Option to Purchase" (the "Agreement"). As its title suggests, the Agreement entitled Gulf American to charter two barges from Felicia and, at Gulf American's option, to purchase them.

Defendants now move to dismiss this action for lack of personal jurisdiction under Fed.R.Civ.P. ("Rule") 12(b)(2) or alternatively to transfer it to the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 1404(a). For the reasons stated in this memorandum opinion and order, both motions are denied.

### Facts[1]

In the early months of 1982 Gulf American (based in Panama City, Florida) became interested in renting barges to transport various petroleum products on the Intercoastal Waterway between the panhandle area of Florida and Brownsville, Texas. Toward the end of March 1982 Joseph Large ("Large"), one of the Gulf American partners, spotted in the Waterways Journal a Felicia advertisement offering barges for lease. Intrigued, Large telephoned Carmelo Aiello ("Aiello"), a Felicia employee in its West Chicago office, to explore the possibility of chartering Felicia barges. During the ensuing weeks Large and Aiello had several more telephone conversations to negotiate the specific terms of a leasing arrangement. On June 4, 1982 a Gulf American employee met with Aiello in Chicago to discuss the condition of the barges and then traveled to Lemont, Illinois to inspect both vessels.

On July 1, 1982 Aiello and Kay Large, another Gulf American partner, signed the Agreement in Panama City, Florida. Nine days later an official of Waterways Transportation Services, Inc. ("Waterways"), acting on behalf of both Felicia and Gulf American,[2] inspected both barges in Lemont and issued a report on their condition. Under the Agreement such a joint inspection was required both before delivery and after redelivery of the barges to Lemont.

At Large's request (made sometime before delivery) Felicia customized the two barges and their equipment to conform to the specifications given by Large. On July 18, 1982 Felicia delivered the barges to Gulf American at Lemont—the delivery location established by the Agreement (under the terms of which Gulf American then became contractually obligated to make rental payments and purchase insurance coverage). Aiello arranged for third parties to transport the barges to Hanrahan, Louisiana,

---

1. This version of the events is based on the affidavits tendered by both sides. Though their emphasis differs, the factual presentations are generally consistent. For the current purpose of determining whether a prima facie case for personal jurisdiction exists, the few discrepancies have been resolved in Felicia's favor. See *Met-L-Wood Corp. v. Lifetime Pools, Inc.*, 475 F.Supp. 149, 151 (N.D.Ill.1979).

2. Defendants contend that surveyor acted only on Felicia's behalf. They point to part of the second page of his report reading:

| Authored By: | Mr. Carmelo Aiello |
| | Felicia, Ltd. |
| For Account of: | Felicia, Ltd. |
| | W. Chicago, Illinois |

Defendants prefer to overlook the key entry on that same page (the substance of which also appears on the report's title page):

| Attending Surveyor: | Surveyor Randy Schroeder |
| | Waterways Transportation Service, |
| | Inc., jointly representing both owner |
| | and charter |

No inconsistency imperils Felicia's position. At worst the first-quoted language suggests Felicia alone selected (and perhaps paid) the joint representative whose barge survey satisfied the Agreement's requirement of a "joint inspection by Owner and Charterer." But that would not detract from Waterways' joint representation. By deliberately waiving its contractual right to rely on its own employees, Gulf American acquiesced in that procedure for carrying out the Agreement's mandate and accepted the surveyor as its own agent. Any factual conflict on this score must be resolved in Felicia's favor in any event. See n. 1.

where Gulf American employees first took physical possession.[3]

Because of its dissatisfaction with the seaworthiness of the two barges, Gulf American returned the vessels (which are now docked at Lemont) without paying any rent or obtaining a performance bond. These asserted contractual breaches form the basis of Felicia's present suit.

### Personal Jurisdiction

Exercise of personal jurisdiction over the nonresident defendants must comply with both statutory and constitutional standards. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny define the due process constraints. Because no federal statute prescribes the manner of service of process in diversity actions, under Rule 4(d)(7) the Illinois long-arm statute (Ill.Rev. Stat. ch. 110, § 2–209(a)(1), "Section 2–209(a)(1)") furnishes the statutory predicate:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
>
> (1) The transaction of any business within this State.

Because constitutional questions should not be faced unless they must, this opinion will address the statutory test first.

### 1. *"Transaction of Business"*

Until recently it had been assumed Section 2–209's predecessor extended jurisdiction to the outermost boundaries permitted by the Due Process Clause. *See, e.g., Nelson v. Miller,* 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957). Then in *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 436–37, 56 Ill.Dec. 657, 661–62, 427 N.E.2d 1203, 1207–08 (1981), the Illinois Supreme Court announced the statute was not coextensive with due process requirements. *See also Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981).

But the pronouncements in *Green* and *Cook Associates* do not signal any significant curtailment in the reach of Section 2–209. First, they merely express the unexceptionable notion that Section 2–209 (which after all does not expressly adopt the Due Process Clause) should be interpreted in light of the "fixed meaning" of the actual words used by the Illinois legislature. Second, their specific holdings are also unremarkable, for the forum contacts they found insufficient were tenuous and likely would not have satisfied the dictates of due process either. *See Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391, 398–99 (N.D. Ill.1982). Most important, it would be inconsistent with *Green* and *Cook Associates* themselves to read those cases as undercutting jurisdictional precepts developed in prior *Illinois* case law.

■ Gulf American plainly transacted business in Illinois within the meaning of Section 2–209(a)(1). All roads lead to that destination.

First, it performed (and committed itself to perform) substantially all its contractual obligations in Illinois (*see Ronco,* 539 F.Supp. at 395 and cases cited):

1. It participated in the definitive joint inspection of the two barges at Lemont through the Waterways surveyor, its own representative as well as Felicia's.

2. It took delivery of the vessels in Lemont and was contractually responsible for returning them to the same location (unless the parties designated anoth-

<hr/>

3. As for redelivery, Gulf American was contractually responsible for returning the barges to Lemont unless (1) the parties agreed on an alternative location or (2) Gulf American exercised its purchase option. In the latter event the closing *had* to be held at the Chicago office of Felicia's attorney.

er redelivery point or Gulf American exercised its purchase option).[4]

3. It was obligated to remit its rental payments to Felicia's West Chicago office.[5]

4. Had it elected to exercise its purchase option, Gulf American's representative would have been required to travel to Chicago to close the transaction.[6]

Second, Gulf American's very initiation of the *specific* Felicia transaction in suit is another factor that strongly supports jurisdiction.[7] *See Telco*, 586 F.2d at 52.

Third, the contractual and practical necessities that Felicia perform its obligations in Illinois also confirm jurisdiction here. Under the Agreement Felicia had to deliver and accept redelivery of the barges at Lemont. And the joint inspection called for by the Agreement also had to be conducted at Lemont (the only port at which Felicia ever docked these barges) or at least somewhere in northern Illinois (given the fact Felicia's only office is in Chicago). This is a critically different situation from that in *Lakeside,* 597 F.2d at 603, which disregarded the forum situs of plaintiff's performance because

of its absolute control over where its contractual activities would be conducted.[8]

As for the final factor to be considered—the place of contract negotiations and execution—it is no worse than neutral on the question whether Gulf American transacted business in Illinois. Contract preliminaries involved Illinois (where Gulf American sent its own employee to inspect the barges), Illinois-Florida phone conversations[9] and Florida (immediately before execution of the Agreement). Actual signing of the Agreement took place in Florida. But as *Lakeside,* 597 F.2d at 604 emphasizes, "formalities of contract execution are not determinative for purposes of jurisdiction." Certainly the aggregate of these items does not *negate* Illinois jurisdiction.

Jurisdiction is not the same balancing concept as, say, forum non conveniens. On the facts here it cannot seriously be questioned that Gulf American transacted business in Illinois for Section 2–209(a)(1) purposes.

■ Given the nature of general partnerships, that conclusion carries with it jurisdiction over the Gulf American partners.

---

**4.** Several factors distinguish *Lakeside Bridge & Steel v. Mountain State Construction Co., Inc.,* 597 F.2d 596, 604 n. 14 (7th Cir.1979), which discounted the jurisdictional significance of a contract term requiring shipment F.O.B. the forum state. Most significantly, *Lakeside* involved an outright sale—a transaction in which risks of ownership might reasonably be viewed as having shifted from seller to buyer at any one of a number of different geographic locations. By contrast, this case involves a lease—a *possessory* right. In such a transaction the delivery of possession (and concomitant shifting of risk) is clearly the most significant factor—and that was in Illinois.

**5.** Though entitled to some weight, this factor is not of critical significance. Certainly standing alone it would not render Gulf American amenable to suit in this forum. *See Telco Leasing, Inc. v. Marshall County Hospital,* 586 F.2d 49, 52 (7th Cir.1978).

**6.** Gulf American unsuccessfully attempts to depreciate the importance of this factor and the second numbered one by emphasizing their contingent nature. But taken together, the two contingencies merge into a certainty. Whether or not Gulf American opted for purchase, its Agreement undertakings required further Illinois dealings—either by returning the vessels

to Lemont or by participating in the closing in Chicago.

**7.** Felicia cannot be labelled as the initiator merely because Gulf American learned of the barges' availability for charter from Felicia's published advertisement. On that theory, virtually every lessee or buyer could escape this characterization, for its awareness of the other side's general willingness to sell or lease could almost always be traced to information made available by the seller or lessor (even a Yellow Pages listing). Thus the relevant inquiry is which party instigated the *specific* transaction in question.

**8.** *Lakeside,* 597 F.2d at 603 n. 13, specifically reserved judgment on the very issue presented here: "whether the result would be different if the contract required the plaintiff to perform in the forum state or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary."

**9.** Of course mere communication with a forum plaintiff by interstate telephone or mail service does not significantly aid jurisdiction. *Lakeside,* 597 F.2d at 604.

General partners as well as partnership employees or agents are agents for all other general partners. Accordingly the Illinois contacts that bring Gulf American into court equally support the assertion of personal jurisdiction over each of its general partners. *See Morton v. Environmental Land Systems, Ltd.,* 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1st Dist.1977) (affirming without discussion the exercise of personal jurisdiction over all nonresident general partners on basis of forum contacts by two partners).

■ These fundamental agency concepts are unaffected by Ill.Rev.Stat. ch. 110, § 2–411, which simply offers the procedural choice of suing a partnership in its firm name or suing the individual partners. Nor does the line of case law typified by *Hurleton Whittier, Inc. v. Barda,* 82 Ill.App.3d 443, 37 Ill.Dec. 838, 402 N.E.2d 840 (1st Dist.1980) call for a different result. Applying an Illinois version of what is often called the "corporate shield" doctrine to corporate officials, *Hurleton Whittier* said, 82 Ill.App.3d at 447, 37 Ill.Dec. at 841, 402 N.E.2d at 843 (emphasis added):

> The existence of personal jurisdiction must be established by acts of the defendant; however, the conduct of a person in a *representative* capacity cannot be relied upon to exercise individual personal jurisdiction over that person.

*Accord, Knorr Brake Corp. v. Harbil, Inc.,* 550 F.Supp. 476, 479 (N.D.Ill.1982). But by definition corporate officials are *only* agents, while general partners are both agents *and* principals. As principals they do not represent the partnership, they *are* the partnership.[10]

2. *Due Process*

■ *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, articulated the due process limits on assertion of personal jurisdiction:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

"Minimum contacts" between defendant and forum need only be substantial enough so that the defendant might reasonably have anticipated being haled into the courts of the forum state. *See World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). As our Court of Appeals reminds us, "the proper inquiry is whether a non-resident defendant can be said to have invoked, by act or conduct, the benefits and protections of the law of the forum." *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1144 (7th Cir.1975).

■ Certainly Gulf American's forum involvement overleaps the due process threshold. Indeed that conclusion follows inescapably from this opinion's earlier determination that the more stringent "transaction of business" test is satisfied. Through the very entry into a contract requiring the bulk of Gulf American's performance to take place in Illinois, defendants purposefully availed themselves of "the benefits and protections of [Illinois] law." In *World Wide Volkswagen* terms, they clearly should have anticipated their susceptibility to suit in this forum. Finally, as the next section's evaluation will confirm, a weighing of comparative inconveniences and equi-

10. Defendants cite two plainly inapposite cases. *Taormina Corp. v. Escobedo,* 254 F.2d 171, 173 (5th Cir.1958) merely permitted an amendment joining the partnership and several other partners as defendants to relate back (for limitations purposes) to the complaint, which had been brought only against three individual partners. And *Donald Manter Co. v. Davis,* 543 F.2d 419 (1st Cir.1976) only held personal service within the forum subjected a nonresident partner to the court's process—a straight-forward application of black letter jurisdictional principles. No inference is to be drawn from *Davis'* failure to sweep the other partner and the partnership into the jurisdictional dragnet, for the appeal simply did not pose that issue. Moreover because the *Davis* partner's presence in the jurisdiction was unrelated to the partnership, there was no justification (under agency principles applicable in a partnership context) for imputing his forum contact to his fellow partner or the partnership.

ties reinforces the constitutional propriety of requiring defendants to defend this action here. *See Met-L-Wood Corp.,* 475 F.Supp. at 152 (taking such considerations into account in its minimum contacts analysis).

### Section 1404(a) Transfer

■ Defendants have alternatively moved to transfer this action to the Northern District of Florida under 28 U.S.C. § 1404(a) ("Section 1404(a)"):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Though it evolved from the forum non conveniens doctrine, Section 1404(a) confers broader discretion on a district court than its common law antecedent. *See Rockwell International Corp. v. Eltra Corp.,* 538 F.Supp. 700, 702 (N.D.Ill.1982). In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1957)), the Supreme Court enumerated the "private interest" and "public interest" factors that should inform the exercise of such discretion (citation omitted):

> The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof, availability of compulsory process for attendance of the unwilling, and the cost of obtaining willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive." ... The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

the unfairness of burdening citizens in an unrelated forum with jury duty.

■ Detailed consideration of those factors is unnecessary, for defendants' showing in each sphere is patently inadequate.

Private interest considerations are heavily tilted against transfer:

1. Importantly, the barges themselves are presently docked in Lemont and could be transported to Florida only at great expense. Location of the physical evidence is especially important because the barges' asserted unseaworthiness—the crux of Gulf American's defense to Felicia's charges of contractual breach—will probably be the decisive issue. Viewing of that evidence by the trier of fact, rather than being forced to decide between the expected contradictory expert opinions without the ready availability of the vessels if necessary, may be of major significance.

2. Though the witnesses appear to be about evenly distributed between Illinois and Florida, the key witness—the jointly-designated Waterways surveyor who inspected the barges shortly before delivery—lives in Illinois.

3. Defendants have not justified their bald assertion that the relevant documents are concentrated in Florida. Even were that so, their movement would involve less expense and logistic difficulty than moving the barges.

In short, transfer would merely shift the convenience from defendants to Felicia. That is no basis for granting defendants' motion, *see* 15 Wright & Miller, *Federal Practice and Procedure* § 3848 at 246 n. 20 (1976 & Supp.1982) (citing cases), particularly when Gulf American's transaction-related contacts with Illinois far surpass Felicia's fleeting connection with Florida (including Aiello's brief visit to sign the Agreement).

As for the public interest, Illinois certainly is a more interested forum state than Florida, for the transaction has closer ties

with Illinois [11] and the dispute involves economic injury to an Illinois citizen, Felicia, *see Ronco*, 539 F.Supp. at 402. Moreover defendants have made no showing that the docket of the proposed transferee forum is less congested than that of this Court.

### Conclusion

This Court has personal jurisdiction over defendants, and transfer of this case to the Northern District of Florida is unwarranted. Accordingly defendants' Rule 12(b)(2) and Section 1404(a) motions are denied. Defendants are ordered to answer the Complaint on or before January 31, 1983.

---

11. Even were the geographic area in which Gulf American intended to use the barges a relevant aspect of the challenged transaction (a doubtful proposition), it is far from clear whether they would have been operated in Florida coastal waters for a significant time period.