**Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, as Receiver of George Washington Life Insurance Company, Plaintiff,**

v.

**Arthur W. MILAM, et al., Defendants.**

Civ. A. No. 2:92–0935.

United States District Court, S.D. West Virginia, Charleston Division.

July 22, 1993.

Joshua I. Barrett, Rudolph L. DiTrapano, Debra L. Hamilton, Ditrapano & Jackson, Charleston, WV, Ellen G. Robinson, C. Philip Curley, Mary Cannon Veed, Cynthia H. Hyndman, Robinson Curley & Clayton, P.C., Chicago, IL, for plaintiff.

John E. Jenkins, Jr., John M. Poma, Suzanne McGinnis Oxley, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, WV, for Arthur W. Milam.

John H. Wilbur, pro se.

Walter C. Walden, Grand Rapids, MI.

Dudley D. Allen, pro se.

Frank E. Clark, Jr., pro se.

Michael J. Davoli, pro se.

John E. Jenkins, Jr., John M. Poma, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, WV, for Mahoney, Adams & Criser, P.A.

Rebecca A. Betts, Robert B. King, King, Betts & Allen, Charleston, WV, Paul J. Bschorr, Alice K. Jump, White & Case, New York City, for John J. McAvoy and Carolyn B. Lamm.

Michael Bonasso, Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for Betty Cordial, Lynn Pendlebury, John Collins and Cheryl Davis.

John H. Tinney, John J. Nesius, Miller A. Bushong, III, Spilman, Thomas, Battle & Klostermeyer, Charleston, WV, David Alden, Cleveland, OH, for Tom Fennell and Ernst & Young.

John Andrew Smith, Kay, Casto, Chaney, Love & Wise, Charleston, WV, for Lamar Walker and Walker & Associates.

Michael Bonasso, Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, WV, Therese Koelle Desai, Michael R. Glover, Joyce N. Van Cott, Glover & Van Cott, Phoenix, AZ, for CTF & Associates, Inc.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are renewed motions to dismiss for lack of personal jurisdiction filed pursuant to the provisions of *Rule* 12(b)(2), Fed. R.Civ.P., by Defendants Dudley D. Allen, Frank E. Clark Jr., Michael J. Davoli, John H. Wilbur, Arthur W. Milam, Mahoney, Adams and Criser, P.A., f/k/a Mahoney, Adams, Milam, Surface and Grimsley, P.A., also f/k/a Mahoney, Hadlow and Adams, P.A., John J. McAvoy and Carolyn B. Lamm.[1] Plaintiff, West Virginia State Insurance Commissioner, seeks in this action to recover losses suffered by the now insolvent George Washington Life Insurance Company ("GW LIFE"), a West Virginia corporation. Plaintiff alleges GW LIFE's insolvency resulted from the systematic fraud and breach of fiduciary duties of certain of its officers and directors, and from the professional negligence of certain of its attorneys.

By Order entered February 12, 1993, the Court denied without prejudice Defendants' earlier motions to dismiss, and ordered the parties to conduct discovery on the jurisdictional issues. In their renewed motions to dismiss, Defendants again assert this Court lacks personal jurisdiction over each of the Defendants.[2] For reasons which follow, the Court **DENIES** the renewed motions to dismiss filed by each Defendant except for John J. McAvoy and Mahoney, Adams & Criser, P.A., whose dismissal motions the Court **GRANTS**.

### I.

When a court's personal jurisdiction is contested by a Rule 12(b)(2) motion, the jurisdictional question raised is one for the court, and the plaintiff bears the burden

---

1. Also pending is Plaintiff's motion to file a surreply. The Court **GRANTS** this motion, and will consider the surreply along with all the parties' other filings for purposes of resolving these motions.

2. Defendant Walter C. Walden originally filed a motion to dismiss denied by the Court in its February 12, 1993 Order. Mr. Walden has not renewed his motion.

of ultimately proving by a preponderance of the evidence the existence of a ground for jurisdiction. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). But where, as here, the court addresses the challenge only on the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint, the burden on the plaintiff is to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge. *Id.; Ryobi America Corp. v. Peters,* 815 F.Supp. 172, 175 (D.S.C. 1993); *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 588 (E.D.Va.1992).

The burden plaintiff bears to establish the court's jurisdiction normally is not a heavy one, particularly where the court chooses to rule on the issue without an evidentiary hearing. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (1990). Mere allegations of personal jurisdiction are sufficient for a party to make a *prima facie* showing. *Dowless v. Warren–Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir.1986). When considering a challenge to its personal jurisdiction on the parties' filings, the court must resolve factual conflicts in favor of the party asserting jurisdiction for the purpose of determining whether he or she has made the requisite *prima facie* showing. *Bakker,* 886 F.2d at 676; *Eastern Marketing Corp. v. Texas Meridian Prod. Co., Inc.,* 798 F.Supp. 363, 364 (S.D.W.Va.1992) (Haden, C.J.). The Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Bakker,* 886 F.2d at 676.

## II.

The Court employs the traditional two-step analysis [3] to resolve the personal jurisdiction dispute at issue here. Consequently, it must determine whether the West Virginia long-arm statute, W.Va.Code § 56–3–33 (1992),[4] is applicable, and if so, whether the statute's exercise in this case will violate the due process clause of the United States Constitution. *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 290, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980); *Dowless,* 800 F.2d at 1306; *Vishay Intertechnology, Inc. v. Delta International Corp.,* 696 F.2d 1062, 1064 (4th Cir.1982).

There being no talismanic jurisdictional formula, the Court must nevertheless decide whether Plaintiff has met its burden of establishing a *prima facie* case of personal jurisdiction with respect to each Defendant. *Burger King v. Rudzewicz,* 471 U.S. 462, 485–86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1984). The Court has analyzed Plaintiff's case as it relates to each Defendant on the facts and arguments presented by the parties. For brevity's sake, however, it is possible to group certain of the Defendants for this discussion by shared traits bearing on their amenability to jurisdiction.

### A. *The Officer/Director Defendants*

Most Defendants served as members of GW LIFE's Board of Directors or as corporate officers; some served in both capacities.[5]

---

3. The traditional two-step approach has, for effective purposes, only one step in cases where the state's long-arm statute permits exercise of jurisdiction to the limits of due process. West Virginia's long-arm statute is coextensive with due process. *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,* 831 F.2d 522, 525 (4th Cir. 1987); *Harman v. Pauley,* 522 F.Supp. 1130 (S.D.W.Va.1981). Because the statute permits the exercise of jurisdiction to outer constitutional limits, the first step of the Court's analysis "collapses into the second." *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir.1976). The state law and due process analyses are therefore identical, and the Court proceeds directly to determine whether it is constitutionally permissible to require Defendants to defend this suit in this Court. *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657 n. 2 (4th Cir.1989).

4. The portion of this statute of immediate relevance here is W.Va.Code § 56–3–33(a)(1), which confers jurisdiction over non-residents who are: "transacting any business in this State."

5. Arthur W. Milam served as a member of the GW LIFE Board of Directors from 1968 until 1987. John H. Wilbur served as President, Chief Executive Officer, and Chairman of the Boards of Directors of both GW LIFE and George Washington Corporation ("GW CORP"), its parent corporation. Dudley D. Allen was a member of the Boards of Directors of both GW LIFE and GW CORP from 1982 until 1991. Frank E. Clark Jr. served GW LIFE as Treasurer from 1979 through 1991, and Secretary from 1981 through 1991. Michael J. Davoli was a member of the Boards of Directors of both GW LIFE and

Each of the O/D Defendants alleges this Court lacks personal jurisdiction over him, arguing principally the West Virginia long-arm statute does not apply to him, and there exist insufficient contacts between the movant and West Virginia for the Court to assert jurisdiction consistent with due process requirements.[6]

The Court is of the opinion the *Pittsburgh Terminal* decision, *supra* note 3, is dispositive of the O/D Defendants' motions.[7] There the court held two non-resident directors of a West Virginia corporation transacted business in the State, even though they were never present in the State, when they solicited proxies from a West Virginia corporation and, as directors, voted the shares of the corporation in favor of a proposed merger. Regardless of where the actual solicitation, proxy mailings and voting occurred, the Court concluded defendants transacted business in West Virginia because their acts could be given effect only in West Virginia, the state of incorporation.

The court concluded "[e]ach act ... was given effect in West Virginia by virtue of West Virginia law just as surely as if [the directors] had been in the principal office of the corporation in West Virginia, present and voting in person." *Pittsburgh Terminal,* 831 F.2d at 527. The Fourth Circuit rejected defendants' argument that *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), required a state to include the word "director" explicitly in its long-arm statute to bring corporate directors within the statute's scope. Said the court:

> Certainly, a director of a corporation has created a continuing obligation between himself and the corporation, one which inures significantly to the director's benefit, not to mention that of the corporation. Directors reap the advantages and protections available to them under state law, and it is not unfair to require them to answer for any alleged breaches of trust as a director in the forum that has bestowed those protections. No one forced or tricked the defendants into assuming their positions, and it seems clear that [the defendants] have purposely availed them-

GW CORP from 1981 until 1988; he also served at various times as Executive Vice President of GW CORP and Vice President of GW LIFE.

Defendants Milam, Wilbur, Allen, Clark, and Davoli all served as officers, directors, or both, of GW LIFE during the time period relevant to Plaintiff's allegations. For convenience, the Court will refer to these five Defendants as Officer/Director ("O/D") Defendants.

6. Defendant Dudley D. Allen argues in his reply brief this action is mooted by Plaintiff's recent filing of a similar suit in the Circuit Court of Duval County, Florida. Plaintiff has submitted a surreply alleging it filed the Florida action solely to avoid the running of the statute of limitations on its claims against Defendants, so it could assert those claims in the state forum should this Court find it lacks personal jurisdiction over Defendants. Plaintiff has moved to stay the Florida action pending this Court's resolution of the jurisdictional issues, and intends to nonsuit the state case should this Court resolve those issues in Plaintiff's favor.

Defendant Allen cites no authority in favor of his argument. The general rule provides the pendency of a state court action is not a basis to bar similar proceedings in a federal court having jurisdiction and that federal courts must hear cases within their jurisdiction. *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910); *McLaughlin v. United Virginia Bank,* 955 F.2d 930, 931 (4th Cir.1992). Al-

though in extraordinary and exceptional circumstances, a district court may stay or dismiss a case where a duplicate state case is pending, *see Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the instant case does not warrant such action. *Also compare Tweel v. Frankel,* 444 F.Supp. 1071 (S.D.W.Va.1978) (Haden, C.J.).

This case was pending long before Plaintiff filed his complaint in Florida. Consequently, while this action has progressed significantly, there apparently has been relatively little progress on the state claim. Moreover, Plaintiff asserts in the case at bar claims arising under Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, not alleged in the Florida complaint. In order to qualify for federal court deference to a parallel state proceeding under *Colorado River,* the federal case must duplicate the pending state proceedings. *McLaughlin,* 955 F.2d at 931. This case does not duplicate the Florida action. Clearly, this Court may not surrender its jurisdiction in deference to the Florida proceeding as *Defendant Allen* suggests. His argument to the contrary lacks merit.

7. Although each of the O/D Defendants has attempted in comprehensive fashion to distinguish *Pittsburgh Terminal* from the case at hand, the Court finds no authority or persuasive basis to limit the Fourth Circuit's holding as the O/D Defendants suggest.

selves of the privilege of doing business as directors under West Virginia's laws. *Pittsburgh Terminal,* 831 F.2d at 529.

GW LIFE was established under West Virginia's corporate laws in 1906. The O/D Defendants cannot contend credibly they were unaware GW LIFE was a West Virginia corporation when they accepted and exercised directorships. Neither should they be surprised at being haled into this Court to answer charges of alleged wrongdoing in their capacities as officers and directors of the corporation. Every decision they made and every action they undertook with regard to GW LIFE affected and was directed at a West Virginia resident: GW LIFE. "Of course, it may be something of a fiction to say that a corporation is a resident of the chartering State. Nevertheless, '[i]n many respects ... the law acts as if State chartering of a corporation has meaning.'" *Pittsburgh Terminal,* 831 F.2d at 530 (quoting *Shaffer,* 433 U.S. at 226 n. 4, 97 S.Ct. at 2591 n. 4 (Brennan, J., concurring and dissenting)).

■ Although the O/D Defendants argue strenuously that requiring them to defend in this Court would offend notions of "fair play and substantial justice," the Court concludes the only notions offended are Defendants' own. *See Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184. West Virginia has a strong interest in providing a forum for a claim such as this, where the directors of one of its domestic corporations are alleged to have committed wrongful acts in the execution of their duties as directors and to the detriment of their corporation. *Pittsburgh Terminal,* 831 F.2d at 529–30. This interest may be implied fairly from the significant duties imposed by State law upon corporate fiduciaries and from the pervasive regulation by West Virginia of the State's insurance industry. The State's interest in providing a convenient forum for a suit like this one alleging misfeasance of corporate fiduciaries

outweighs the burdens the O/D. Defendants must bear to litigate this suit in this Court. "Defendants and officers derive many benefits from the legal fiction of the corporation. It does not seem unfair to require them in turn to shoulder one of the few burdens of such a fiction." *Pittsburgh Terminal,* 831 F.2d at 530.

The Court concludes Plaintiff has successfully mounted a *prima facie* case of personal jurisdiction with regard to the O/D Defendants. Under the Court of Appeals' holding in *Pittsburgh Terminal,* the O/D Defendants' acceptance of positions as directors and officers at GW LIFE constitutes sufficient minimum contacts to warrant exercise of jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court concludes exercise of jurisdiction over the O/D Defendants would not offend traditional notions of fair play and substantial justice. *World–Wide Volkswagon,* 444 U.S. at 292, 100 S.Ct. at 564. These renewed motions to dismiss are **DENIED.**

### B. *The Attorney Defendants*

Plaintiff has also asserted claims sounding in professional negligence against three lawyers and a Florida law firm who performed legal work for GW LIFE during the time period relevant to Plaintiff's allegations.[8] Each of the Attorney Defendants alleges in substance his or her contacts with West Virginia are insufficient to warrant exercise of personal jurisdiction, and it would be fundamentally unfair to require him or her to defend this suit in this forum.

The parties dispute the accuracy of much of the factual foundation Plaintiff sets forth as basis for its contention personal jurisdiction exists. But for the limited purpose of resolving the issue of personal jurisdiction, the Court must resolve these factual disputes in Plaintiff's favor. *Bakker,* 886 F.2d at 676; *Eastern Marketing Corp.,* 798 F.Supp. at

---

8. These "Attorney Defendants" include: Carolyn B. Lamm and John J. McAvoy, partners in the Washington D.C. office of the law firm of White & Case; Arthur W. Milam, John H. Wilbur and Dudley D. Allen, all of whom are also O/D Defendants; and the law firm of Mahoney, Adams and Criser, P.A.

Having already resolved Plaintiff has established a *prima facie* case of personal jurisdiction over the O/D Defendants, the Court need not revisit the inquiry here regarding Defendants Milam, Wilbur and Allen. *See, e.g., Rice v. Nova Biomedical Corp.,* 763 F.Supp. 961, 966 (N.D.Ill. 1991).

364. Viewing as it must Plaintiff's allegations in the light most favorable to existence of jurisdiction, the Court concludes Plaintiff has established a *prima facie* case of personal jurisdiction over Attorney Defendant Carolyn B. Lamm, but has failed to do so with respect to Defendants John J. McAvoy and Mahoney, Adams & Criser, P.A.

### 1. Carolyn B. Lamm

■ Defendant Lamm served as counsel on certain legal matters for GW LIFE on occasions spanning from 1983 through 1989. Her firm, White & Case, billed GW LIFE more than $2.1 million during this period for services, the bulk of which appear to have been performed by Defendant Lamm. Although much of Defendant Lamm's labors on behalf of GW LIFE were performed outside West Virginia, a substantive portion of her work took place here.

A significant part of Defendant Lamm's duties as counsel for GW LIFE involved representing the corporation in administrative litigation before the West Virginia Insurance Commissioner. Like other states, West Virginia has a complex scheme for regulating insurance companies which requires, *inter alia,* the companies undergo detailed triennial examinations of financial status and business practices, to ensure financial viability and compliance with State laws and regulations. W.Va.Code § 33–2–9 (1992).

No such examination was filed for GW LIFE from 1978 until 1989. Led by Defendant Lamm, White & Case vigorously resisted the filing of each examination of GW LIFE conducted by State regulators during this time, allegedly because the examinations showed GW LIFE with a dangerously dwindling financial surplus, the magnitude of which could well have forced the corporation into receivership. Plaintiff alleges the litigation concerning these examinations, conducted primarily by Defendant Lamm, allowed the O/D Defendants to maintain control of GW LIFE, continue to bleed its resources, stall any remedial measures the West Virginia Insurance Commissioner would otherwise have taken, and obscure many illegal transactions of the O/D Defendants.

All administrative litigation concerning the triennial examinations took place in West Virginia. Defendant Lamm repeatedly traveled to West Virginia for matters related to the litigation. During conduct of the litigation, Defendant Lamm attended several hearings in West Virginia, authored and endorsed pleadings filed in the proceedings, met in West Virginia with representatives from the State Insurance Commissioner's office, and exchanged letters and telephone calls regularly with parties in West Virginia concerning the litigation. Defendant Lamm's representation of GW LIFE during these proceedings appears to have been extensive and, indeed, integral to the corporation's conduct of the litigation.[9]

The facts as Plaintiff presents them convincingly demonstrate Defendant Lamm had sufficient contact with West Virginia to justify requiring her to defend this action in this forum. By maintaining a continuing professional relationship with a West Virginia corporation that repeatedly called upon her to represent it both within and without the State, Defendant Lamm purposely availed herself of the privilege of conducting activities in West Virginia.[10] *Hanson v. Denckla,*

---

**9.** Plaintiff also sets forth Defendant Lamm's contacts with West Virginia during other aspects of her representation of GW LIFE, including the conduct of three shareholder suits on behalf of the corporation. Although these other contacts are more tenuous and involve far less contact with West Virginia, *see infra* pp. 324–25, taken together with the numerous other contacts Plaintiff has set forth, they support the long-term, continuing relationship between GW LIFE and Defendant Lamm which saw Lamm regularly called upon to aid the corporation in its legal affairs.

**10.** The Attorney Defendants place great stock in *Sher v. Johnson,* 911 F.2d 1357 (9th Cir.1990),

*Mayes v. Leipziger,* 674 F.2d 178 (2d Cir.1992), *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987), and *Kowalski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7 (1st Cir.1986). In each of those cases, courts refused to allow assertion of personal jurisdiction over an out-of-state law firm by virtue of its representation of an in-state client. But existence or non-existence of personal jurisdiction must be evaluated on a case-by-case basis, *Burger King,* 471 U.S. at 485–86, 105 S.Ct. at 2189, and the Court finds significant factual distinctions between the instant case and those cited by Defendants.

In each of those cases, law firms were solicited to perform legal work connected with proceed-

357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The quality and quantity of her contacts with West Virginia were "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). It is neither unfair nor unreasonable to require Defendant Lamm to conduct her defense in this Court.

The professional negligence claim Plaintiff alleges against Defendant Lamm arises out of the entire attorney-client relationship between Defendant Lamm and GW LIFE. Because a significant portion of that relationship and of Defendant Lamm's representation of GW LIFE were centered in West Virginia, the cause of action bears a sufficient relationship to Defendant Lamm's West Virginia activities to give this Court personal jurisdiction over her. *See Dubree v. Myers*, 464 F.Supp. 442, 446 (D.Vt.1978). Moreover, as discussed previously, West Virginia has a significant interest in providing a convenient forum for this type of litigation. Accordingly, the Court concludes Plaintiff has successfully established a *prima facie* case of personal jurisdiction over Defendant Lamm.

### 2. Defendant Mahoney, Adams & Criser, P.A.

Defendant Mahoney, Adams & Criser, P.A. ("Mahoney Adams") served as GW LIFE's general counsel and GW CORP's principal securities counsel. Plaintiff has established Mahoney Adams performed various legal work for GW LIFE over the relevant time period and in doing so, maintained a long-term professional relationship with the corporation. But Plaintiff has presented little else demonstrating the firm had contact with West Virginia.

The chief thrust of Plaintiff's case for jurisdiction over Mahoney Adams surrounds the firm's alleged position as principal securities counsel for GW CORP. As securities counsel, Mahoney Adams lawyers aided GW CORP in preparing the corporation's securities filings, including 10-Ks and proxy statements. Although these documents are required of corporations by federal law, Plaintiff alleges information in the documents was included in other papers submitted to West Virginia by GW LIFE as part of the State's statutory reporting requirements for insurance companies. Plaintiff alleges the information from GW CORP's securities filings later incorporated into the documents prepared for GW LIFE's filing in West Virginia was inaccurate, and Mahoney Adams is therefore subject to personal jurisdiction in West Virginia by virtue of its roundabout "transmission" of incorrect information into the State.

Plaintiff does not allege Mahoney Adams lawyers prepared GW LIFE's West Virginia documents, instead the Commissioner asserts the lawyers knew or should have known the incorrect information in GW CORP's 10-Ks and proxy statements would end up in West Virginia. Plaintiff, however, has not established with certainty what work Mahoney Adams lawyers performed on the GW CORP securities filings, alleging only that Mahoney Adams lawyers "worked on" and "reviewed" the documents.

---

ings *in their own states*—not in the forum state. As detailed previously, Plaintiff here alleges Defendant Lamm repeatedly engaged in litigation and other matters on behalf of GW LIFE in West Virginia.

More significantly, in each of the cases Defendants cite, the law firms were retained for representation in a single legal matter in the law firm's state. The relationships between the attorneys and clients were, as the *Sher* court termed them, "one-shot" deals. *Sher*, 911 F.2d at 1363 n. 3.

Distinguishing *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310 (9th Cir.1987), where the Ninth Circuit held personal jurisdiction existed in California over a Kansas accountant who had main-tained a long-term working relationship with his California client, the *Sher* court emphasized this distinction:

> Sher hired the partnership to represent him in one case. The contract here did not contemplate the extensive future consequences typical of employment relationships.... A one-shot Florida representation does not entail this kind of continuing contact with the forum state.

*Sher*, 911 F.2d at 1363 n. 3.

In the instant case, Plaintiff alleges the Attorney Defendants represented GW LIFE in numerous matters over the several years relevant to his allegations and maintained the type of long-term relationship not present in the cases Defendants cite.

Although Plaintiff certainly implies Mahoney Adams lawyers prepared the portions of the securities filings he contends was inaccurate, he never directly alleges Mahoney Adams lawyers included false information in the filings. Based on the record before it, the Court cannot conclude Mahoney Adams included inaccurate information in GW CORP's securities filings and that it knew such information would make its way into West Virginia, and subject the firm to suit in the State.

Plaintiff also alleges Mahoney Adams lawyers worked along with Defendant Lamm on the administrative litigation regarding State examinations of GW LIFE. But the work on that litigation Plaintiff attributes to Mahoney Adams is significantly more attenuated than the extensive duties performed by Defendant Lamm. Absent from Plaintiff's description of Mahoney Adams' work on the litigation are allegations of frequent travel to and from West Virginia and pervasive participation in the litigation so notable in Defendant Lamm's involvement.

The Court concludes Plaintiff failed to establish a *prima facie* case of personal jurisdiction over Defendant Mahoney Adams. Plaintiff has not alleged sufficient quantity or quality of contacts with West Virginia to justify exercise of personal jurisdiction. Although Plaintiff has alleged the law firm's continuing relationship with GW LIFE, he has not alleged the additional contacts necessary for the Court to conclude Mahoney Adams purposefully availed itself of the privilege of conducting activities in West Virginia. *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239. Nor has he convinced the Court that assuming personal jurisdiction over Mahoney Adams would accord with notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. at 2184. The Court **GRANTS** Mahoney Adams' motion to dismiss.

### 3. John J. McAvoy

Plaintiff's allegations linking Attorney Defendant John J. McAvoy to West Virginia are gossamer thin and reed slender. Defendant McAvoy, a partner at White & Case, appears to have assisted Defendant Lamm in her representation of GW LIFE. But Defendant McAvoy's alleged role in the representation was minimal. Plaintiff did not allege McAvoy traveled to West Virginia in connection with his work for GW LIFE. Neither does McAvoy appear to have sent correspondence into the State nor to have met with State officials. All work McAvoy performed for GW LIFE took place outside West Virginia, and Plaintiff has alleged no direct contact between this Defendant and West Virginia related to his representation of GW LIFE.

■ From Plaintiff's allegations it appears Attorney McAvoy's only work of significance for GW LIFE was his co-representation of the corporation during litigation of three shareholder actions. These lawsuits were conducted wholly outside West Virginia. Plaintiff contends, however, because Defendants McAvoy and Lamm employed West Virginia law during their prosecution of the litigation, they thereby invoked the benefits and protections afforded by the State and are subject to this Court's personal jurisdiction. This novel twist on the law of personal jurisdiction is unconvincing.

Defendants' reference to West Virginia law during their conduct of litigation on behalf of GW LIFE did not constitute invocation of the benefits of that law such that Defendants subjected themselves to suit in this Court. The Supreme Court set forth in *International Shoe* the proper standard for this analysis:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*International Shoe*, 326 U.S. at 319, 66 S.Ct. at 160.

Defendants' use of West Virginia law in litigation on behalf of GW LIFE did not constitute an exercise of the privilege of conducting activities in West Virginia. Nor did Defendants invoke the benefits and protec-

tion of West Virginia laws by mere reference to those laws in litigation.

Plaintiff argues as well even if Defendant McAvoy's contacts with West Virginia are insufficient to establish personal jurisdiction, Defendant Lamm's contacts are imputable to McAvoy by virtue of their relationship as partners. The issue is one of first impression in this District and Circuit. In *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1979), the Supreme Court held the requirements of *International Shoe* must be met as to each defendant over whom a court exercises personal jurisdiction. Two Courts of Appeals recently have held personal jurisdiction must be established over each partner in a partnership individually. *Ytuarte v. Gruner & Jahr Printing and Publishing Co.*, 935 F.2d 971, 972–73 (8th Cir.1991); *Sher v. Johnson*, 911 F.2d 1357, 1365–66 (9th Cir.1990).

The *Sher* court explained that liability and jurisdiction are distinct and independent: "Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum. [Citation omitted]. Regardless of their joint liability, jurisdiction over each defendant must be established individually." *Sher*, 911 F.2d at 1365. *But see Oxford Mall Co. v. K & B Miss. Corp.*, 737 F.Supp. 962, 964 (S.D.Miss.1990); *Felicia, Ltd. v. Gulf American Barge, Ltd.*, 555 F.Supp. 801 (N.D.Ill.1983).

Under the circumstances of this case, to exercise personal jurisdiction over McAvoy based only on Defendant Lamm's contacts with West Virginia would be inconsistent with the tenets of due process. Even viewed in the light most favorable to Plaintiff, McAvoy had no contact with West Virginia sufficient to justify invitation to this Court as a Defendant. His involvement in White & Case's representation of GW LIFE as Plaintiff has portrayed it was minimal and, indeed, insignificant relative to Defendant Lamm's. Exercise of personal jurisdiction over Defendant McAvoy would therefore be fundamentally unfair and contrary to due process requirements. Accordingly, the Court GRANTS Defendant McAvoy's motion to dismiss.

### III.

For these reasons, the Court **DENIES** the renewed motions to dismiss of Defendants Arthur W. Milam, John H. Wilbur, Dudley D. Allen, Frank E. Clark Jr., Michael J. Davoli, and Carolyn B. Lamm, but **GRANTS** the motions of Defendants Mahoney, Adams & Criser, P.A. and John J. McAvoy.